**Kendall COBB, Individually and on behalf of all similarly situated persons, Plaintiffs,**

v.

**Judge Timothy M. GREEN, Colleen M. Steinman, and Anthony Hufnagel, Defendants.**

**No. G83–285 CA5.**

United States District Court, W.D. Michigan, S.D.

April 11, 1983.

Kenneth A. Birch, Birch, Dean & Preston, East Lansing, Mich., for plaintiffs.

George H. Weller, Asst. Atty. Gen., Lansing, Mich., for Green and Steinman.

Jon W. Newman, Pros. Atty., St. Johns, Mich., for Hufnagel.

## OPINION

BENJAMIN F. GIBSON, District Judge.

This is a purported class action seeking declaratory and injunctive relief in which plaintiff challenges the practice of refusing to appoint counsel to represent him and other similarly-situated indigent defendants at hearings on charges of contempt of court for failure to comply with child support orders. Defendant Timothy Green is a Judge of the Circuit Court of Clinton County, Michigan, who held plaintiff in contempt of court. Defendant Colleen Steinman is the Clinton County Friend of the Court, an attorney responsible for enforcement of support orders of the Clinton County Circuit Court. Defendant Anthony Hufnagel is the Sheriff of Clinton County whose duties include the arrest and detention of persons adjudged to be in contempt of court. Presently before the Court is plaintiff's motion for a preliminary injunction; a temporary restraining order was previously issued to preserve the status quo pending the decision on this motion.

Plaintiff is a father of three children who alleges that he has been unable to comply with orders to pay child support because of his inability to secure full-time employment. On March 4, 1983, he appeared before Judge Green and after a hearing was found guilty of contempt of court because of such non-payment. Plaintiff was ordered committed to the county jail for thirty days to be suspended upon the payment of $400 to the Friend of the Court, effective March 18, 1983. Plaintiff's incarceration has been prevented by this Court's temporary restraining order.

Plaintiff contends that his rights secured by the Due Process Clause of the Fourteenth Amendment to the United States Constitution have been violated by defendants' refusal to grant plaintiff the right to be represented by counsel in non-support contempt proceedings and to have counsel appointed if he cannot afford representation, and by defendants' failure to advise plaintiff of such right. Plaintiff alleges that he will suffer irreparable harm in that he faces imminent incarceration as a result of the contempt hearing at which he was unrepresented because of his indigency. Plaintiff also seeks to represent a class of all similarly-situated individuals in the State of Michigan.[1]

In response, defendants Green and Steinman have presented some facts intended to show that plaintiff is not really indigent and therefore has no cause of action. These defendants also argue that if plaintiff is really indigent, it would be a violation of Michigan law to jail him for civil contempt, and relief for any such violation could be had in the Michigan court system.

---

1. Plaintiff defines the class he seeks to represent as comprised of

> all individuals who have been or will be summoned to appear in the Clinton County Circuit Court or other Michigan Circuit Courts to

answer charges that they are in contempt of court by reason of failing to pay child support, and who face incarceration thereof [sic], and who are unable to afford to retain counsel to represent them in such proceedings.

■ Defendant Hufnagel points out that his only involvement in this litigation is in connection with the warrant for plaintiff's arrest received on March 21, 1983. The following day he was notified that the warrant for plaintiff's arrest was being recalled by the Clinton County Circuit Court. Therefore, defendant Hufnagel requests that this cause be dismissed as to him for the reason that it is moot. Plaintiff has agreed that Sheriff Hufnagel should be dismissed at the time of the Court's ruling on the preliminary injunction, which is the subject of this Opinion. Accordingly, defendant Hufnagel is hereby dismissed from this action.

## I. ABSTENTION

The first issue to be addressed is whether this Court should abstain from interfering with the procedures of the state courts under the doctrine of *Younger v. Harris*, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971). The *Younger* abstention doctrine dictates, upon considerations of comity and federalism, that in the absence of extraordinary circumstances federal courts may not enjoin pending criminal proceedings in state court. *Younger* principles have been extended and applied in several contexts where a civil proceeding is pending in state court and important state concerns are present. *E.g., Moore v. Sims*, 442 U.S. 415, 99 S.Ct. 2371, 60 L.Ed.2d 994 (1979) (child abuse proceedings). These have included civil contempt proceedings. *Juidice v. Vail*, 430 U.S. 327, 97 S.Ct. 1211, 51 L.Ed.2d 376 (1977).

When presented with a case raising an issue similar to the one before this Court, the Sixth Circuit held that the *Younger* principles of restraint were applicable. In *Parker v. Turner*, 626 F.2d 1 (6th Cir. 1980), the plaintiffs claimed that the state juvenile court judges in Memphis and Shelby County, Tennessee routinely denied basic due process rights in civil contempt proceedings to indigent fathers who were behind in their support payments. The plaintiffs sought declaratory and injunctive relief, including a declaration that a father

cited for contempt had a right to an appointed attorney if he could not afford one. The Sixth Circuit found the allegations of a pattern of unconstitutional practices to be indistinguishable from the attack on state court bail and sentencing practices in *O'Shea v. Littleton*, 414 U.S. 488, 94 S.Ct. 669, 38 L.Ed.2d 674 (1974), where the Supreme Court thought that the potential interference with the state courts was unacceptable, noting that less intrusive avenues of relief such as appeal within the state system were available. Observing that ample state remedies existed for any unconstitutional conduct, the *Parker* Court affirmed the dismissal on abstention grounds. *Accord, Henkel v. Bradshaw*, 483 F.2d 1386 (9th Cir.1973).

Plaintiff argues that abstention in the case before this Court would be inappropriate in that the Michigan Supreme Court has already ruled that no general due process right to counsel exists in civil non-support contempt proceedings. *Sword v. Sword*, 399 Mich. 367, 249 N.W.2d 88 (1976). The *Sword* court specifically rejected an argument based on *Argersinger v. Hamlin*, 407 U.S. 25, 92 S.Ct. 2006, 32 L.Ed.2d 530 (1972) by distinguishing it as applicable only to punishment for criminal acts as opposed to coercive or remedial civil contempt. That is the very argument which plaintiff advances in this case: that the principle of *Argersinger*, requiring appointment of counsel for indigents, is applicable whenever there is the potential of imprisonment, and not simply whenever a proceeding is deemed criminal rather than civil in nature.

■ Abstention from the exercise of federal jurisdiction is an extraordinary and narrow exception to the duty of a District Court to adjudicate a controversy properly before it. *Colorado River Water Conservation District v. United States*, 424 U.S. 800, 96 S.Ct. 1236, 47 L.Ed.2d 483 (1976). The abstention doctrine applies only if plaintiffs have an opportunity to fairly pursue their federal claims in the state proceedings. *Juidice v. Vail*, 430 U.S. 327, 337, 97 S.Ct. 1211, 1218, 51 L.Ed.2d 376

(1977); *Younger*, 401 U.S. at 45, 91 S.Ct. at 751; *J.P. v. DeSanti*, 653 F.2d 1080, 1084 (6th Cir.1981). "The doctrine of *Younger* non-interference 'naturally presupposes the opportunity to raise and have timely decided by a competent state tribunal the federal issue involved.'" *Martin-Marietta Corp. v. Bendix Corp.*, 690 F.2d 558, 564 (6th Cir.1982) (citations omitted).

■ The Court is of the opinion that abstention is not appropriate in this case, where the issue raised by plaintiff has already been decided by the Michigan Supreme Court. No reason has been presented to believe that the decision in *Sword* would be different if reconsidered today. This Court expressly agrees with Judge Spiegel's decision on this issue in *Mastin v. Fellerhoff*, 526 F.Supp. 969, 971 (S.D.Ohio 1981), where it was stated:

> It would be unjust to require plaintiffs in this case to pursue a futile appeal through the state courts when the issue has already been ruled upon by the highest court in Ohio. Where plaintiffs have no adequate means of redress in the state courts, "extraordinary circumstances" envisioned by *Younger* exist and the federal courts need not abstain.[2]

This case is thus distinguishable from *Parker*, where it appeared that adequate means of redress existed in the state courts, and it was observed, "Should the Tennessee appellate courts be unable or unwilling to correct continuing unconstitutional conduct by the Juvenile Court judges, plaintiffs would then be in a position of showing 'exceptional circumstances' which would warrant federal injunctive relief." 626 F.2d at 10. *See also Cleaver v. Wilcox*, 499 F.2d 940 (9th Cir.1974) (abstention not appropriate where state courts had repeatedly denied claim of right to appointed counsel in child dependency proceed-

ings). Accordingly, the Court proceeds to consideration of plaintiff's request for preliminary injunctive relief.

## II. PRELIMINARY INJUNCTION

In deciding whether a preliminary injunction is appropriate, four factors must be considered:

1) Whether the plaintiffs have shown a strong or substantial likelihood or probability of success on the merits;

2) Whether the plaintiffs have shown irreparable injury;

3) Whether the issuance of a preliminary injunction would cause substantial harm to others;

4) Whether the public interest would be served by issuing a preliminary injunction.

*Martin-Marietta Corp. v. Bendix Corp.*, 690 F.2d at 564–65, *quoting Mason County Medical Ass'n v. Knebel*, 563 F.2d 256, 260–62 (6th Cir.1977).

The wording of the first factor in the decisions of the Sixth Circuit has not been totally consistent. The Court has sometimes referred to "a possibility of success on the merits." *SEC v. Senex Corp.*, 534 F.2d 1240, 1241 (6th Cir.1976). That articulation has been criticized as "unfortunate terminology," and the Court has on other occasions required a demonstration of "a strong or substantial likelihood or probability of success on the merits." *Mason County Medical Ass'n*, 563 F.2d at 261, n. 4. The Court later addressed an apparent inconsistency by quoting with approval from *Metropolitan Detroit Plumbing & Mechanical Contractors Ass'n. v. HEW*, 418 F.Supp. 585, 586 (E.D.Mich.1976):

> This apparent disparity in the wording of the standard merely reflects the circumstances that no single factor is determinative as to the appropriateness of eq-

---

**2.** Like this case, *Mastin* too involved a claim of a right to appointed counsel under *Argersinger* in a civil contempt hearing for non-payment of child support. The *Mastin* Opinion recognized that the Ohio Supreme Court's prior ruling on the issue had expressly relied only on the Sixth Amendment, but found implicit in the holding a rejection of any Fourteenth Amendment due

process right to counsel. In *Sword* the Michigan Supreme Court's consideration of the due process elements is more clear—it relied on the due process analysis in *Gagnon v. Scarpelli*, 411 U.S. 778, 93 S.Ct. 1756, 36 L.Ed.2d 656 (1973). Hence, there is less reason to abstain here than there was in *Mastin*.

uitable relief. In addition to assessing the likelihood of success on the merits, the court must consider the irreparability of any harm to the plaintiff, the balance of injury as between the parties, and the impact of the ruling on the public interest. In general, the likelihood of success that need be shown will vary inversely with the degree of injury the plaintiff will suffer absent an injunction.... It thus appears that the precise wording of the standard for the likelihood of success on the merits is not as important as a realistic appraisal of all the traditional factors weighed by a court of equity. A balancing is required, and not the mechanical application of a certain form of words.

*Roth v. Bank of the Commonwealth,* 583 F.2d 527, 537–38 (6th Cir.1978), *cert. dismissed,* 442 U.S. 925, 99 S.Ct. 2852, 61 L.Ed.2d 292 (1979).

The *Roth* opinion also noted that the Sixth Circuit has cited with general approval the oft-quoted test of Judge Jerome Frank in *Hamilton Watch Co. v. Benrus Watch Co.,* 206 F.2d 738, 740 (2d Cir.1953):

To justify a temporary injunction it is not necessary that the plaintiff's right to a final decision, after a trial, be absolutely certain, wholly without doubt; if the other elements are present (i.e., the balance of hardships tips decidedly toward plaintiff), it will ordinarily be enough that the plaintiff has raised questions going to the merits so serious, substantial, difficult and doubtful, as to make them a fair ground for litigation and thus for more deliberate investigation. (footnote omitted)

The Court has recently emphasized that this alternate or "balance of hardships" test, the purpose of which is to underscore the flexibility that traditionally has characterized the law of equity, does not eliminate the irreparable harm requirement. *Friendship Materials, Inc. v. Michigan Brick, Inc.,* 679 F.2d 100, 105 (6th Cir. 1982).

With these standards in mind, this Court proceeds to consideration of plaintiff's like-

lihood of success on the merits. As noted in *Parker,* the right to appointed counsel in civil contempt proceedings is unsettled. Although it appears that courts have uniformly recognized the right to appointed counsel in situations where a person faces imprisonment for refusing to testify before a grand jury or refusing to comply with an Internal Revenue summons, the courts have been divided on the issue of whether an indigent spouse has a right to appointed counsel in civil contempt proceedings for failure to pay child support or alimony. *Parker,* 626 F.2d at 2, n. 2.

However, the recent opinion of the Supreme Court in *Lassiter v. Dept. of Social Services,* 452 U.S. 18, 101 S.Ct. 2153, 68 L.Ed.2d 640 (1981) provides additional support for plaintiff's argument that there is such a right here. In *Lassiter,* the court reviewed the same right-to-counsel cases upon which plaintiff relies and concluded:

In sum, the Court's precedents speak with one voice about what "fundamental fairness" has meant when the Court has considered the right to appointed counsel, and we thus draw from them the presumption that an indigent litigant has a right to appointed counsel only when, if he loses, he may be deprived of his physical liberty.

452 U.S. at 26–27, 101 S.Ct. at 2159. The Court went on to hold that due process does not require the appointment of counsel in every parental termination hearing, but the potential deprivation of physical liberty which was significantly absent in that case is present here.

Since *Lassiter,* several courts have held that there is a right to appointed counsel in contempt proceedings for non-payment of child support. *Mastin v. Fellerhoff,* 526 F.Supp. 969 (S.D.Ohio 1981); *Young v. Whitworth,* 522 F.Supp. 759 (S.D. Ohio 1981); *McNabb v. Osmundson,* 315 N.W.2d 9 (Iowa 1982). *Contra, Dept. of Human Services v. Rael,* 97 N.M. 640, 642 P.2d 1099 (1982). The Court has reviewed these decisions and finds them sufficiently well-reasoned to hold that plaintiff has raised such substantial and difficult ques-

tions going to the merits as to make them a fair ground for litigation. *See Roth,* 583 F.2d at 537–38.

■■■ Defendants argue that plaintiff is not indigent, or that if he is this Court should assume that under Michigan law the state court system will not allow him to be held in contempt. However, the degree of impoverishment which gives rise to a constitutional right to appointed counsel is not necessarily identical to the inability to make support payments which would prevent one from being held in contempt under Michigan law. *Compare Sword v. Sword,* 399 Mich. 367, 249 N.W.2d 88 (1976) *and* M.C.L.A. § 552,201 *with United States v. Kelly,* 467 F.2d 262 (7th Cir.1972), *United States v. Cohen,* 419 F.2d 1124 (8th Cir.1969), *and* 18 U.S.C. § 3006A(b). In any event, at the hearing on this matter plaintiff presented an offer of proof which would show that his total debts exceed the value of his assets, including his house. On the record before the Court at this time it appears that plaintiff is financially unable to retain counsel and should therefore be allowed to pursue his constitutional claim to appointed counsel.

Based on the foregoing, and without in any way indicating an opinion on the ultimate merits of this case, the Court concludes that plaintiff has shown a strong or substantial likelihood or probability of success on the merits. Of course, the other factors relevant to a request for preliminary injunctive relief must also be considered.

■■■ On the question of irreparable injury, plaintiff's contention is that the lack of assistance of counsel resulted in an erroneous determination of contempt for which he stands to be incarcerated. This is no mere speculation: if Judge Green's order had taken effect on schedule and plaintiff's allegations are true he would be in jail today. The interest in liberty protected by the due process clause is one of the most fundamental of our constitutionally guaranteed freedoms. *Young,* 522 F.Supp. at 762. There is no adequate remedy at law for a deprivation of one's physical liberty. Thus the Court finds that the harm asserted by plaintiff is substantial and irreparable.

■■■ It does not appear that the issuance of a preliminary injunction will cause substantial harm to others. If plaintiff in fact has the present ability to make his delinquent support payments, and if impending or actual incarceration would induce him to make such payments, then an injunction will harm his children by delaying their receipt of such payments. However, any delay is within the control of the state court—it can choose to appoint counsel for plaintiff and then proceed expeditiously with its contempt determination. If, on the other hand, plaintiff in fact has no present ability to make support payments, a denial of the injunction and subsequent incarceration will not aid his children at all, for he cannot secure employment income while in jail. The harm to the state at this juncture, other than its interest on behalf of the children, is simply the cost of appointed counsel for plaintiff.[3]

■■■ Finally, the Court must consider the public interest. It is clearly in the public interest for parents to be required to provide adequate support for their children, since in their failure society must often assume that burden. It is also in the interest of the public that citizens be required to comply with the lawful mandates of courts within their jurisdiction. These interests will not be thwarted by issuance of the injunction. Plaintiff has raised a substantial constitutional question which affects a number of indigent individuals across the state. Given the disputed status of the law in this context, as discussed above, the Court is of the opinion that the public interest would be served by granting the injunction pending a decision on this question.

Upon balancing all the equitable factors to be considered on this request for injunc-

---

3. The Court recognizes, as discussed in *Sword v. Sword,* 399 Mich. at 382–83, 249 N.W.2d 88, that the cost of providing appointed counsel to indi-

gents in non-support contempt proceedings on a state-wide basis would be substantial. *See also Young,* 522 F.Supp. at 763.

tive relief, the Court concludes that plaintiff's motion for preliminary injunction should be granted. The Court is constrained to emphasize that it is not ruling on the merits of plaintiff's claim in this Opinion. The parties will be given an opportunity to submit further briefs and present additional evidence before any such ruling. Similarly, the Court does not decide today whether this action is appropriate for class certification, as the parties have not yet had a chance to address that issue. This Opinion merely holds that plaintiff's request for injunctive relief is granted on a preliminary basis.[4]

---

**4.** The Court is in receipt of defendants Green and Steinman's Motion to Dismiss. The arguments raised therein have been considered for purposes of the preliminary injunction. However, these arguments will be considered further when this matter is heard on the merits. The parties are directed to explore whether a decision on the merits can be made in the context of motions for summary judgment.