PHILIP DUBE, JR. *v.* RAYMOND LOPES, COMMISSIONER OF CORRECTION

SUPERIOR COURT      JUDICIAL DISTRICT OF      FILE No. 214088
FAIRFIELD AT BRIDGEPORT

ROBERT PATERSON *v.* RAYMOND LOPES, COMMISSIONER OF CORRECTION

SUPERIOR COURT      JUDICIAL DISTRICT OF      FILE No. 213834
FAIRFIELD AT BRIDGEPORT

---

Memorandum filed April 23, 1984

*Corinne L. Klatt,* staff attorney, legal assistance to prisoners, for the plaintiff in each case.

*Michael J. Lanoue,* assistant attorney general, for the named defendant in both cases.

*Stephen J. McGovern,* assistant attorney general, for the defendant state of Connecticut in the first case.

*Richard J. Pober,* for the defendant Diane Paterson in the second case.

BERDON, J. The above applications for writs of habeas corpus arise out of being incarcerated for contempt of court for failure to pay child support. The applications raise the following constitutional issues: (1) the plaintiffs were not advised of their right to counsel and, although they were indigent, the court did not appoint counsel; (2) the plaintiffs' confinements were illegal because they were not held separate and apart from others incarcerated for criminal matters;[1] (3) the trial judge failed to conduct a meaningful preincarceration hearing on the issue of their ability to pay; and (4) the plaintiffs have no assets or funds sufficient to pay the child support debts.

Upon filing the applications for habeas corpus, the plaintiffs were released on nonsurety bonds because of the substantial issues raised by them through their petitions. During the pendency of these matters, a decision was rendered on a preliminary injunction in the

---

[1] This issue was resolved when the attorney general on behalf of the state stipulated that the plaintiffs, at their option, would be segregated from those held on criminal charges.

case of *Lake* v. *Speziale*, United States District Court, District of Conn., Civil Action No. N-83-346 (Feb. 22, 1984). Judge Daly in *Lake* ruled that procedural due process requires a defendant who is faced with potential incarceration in a civil contempt proceeding to enforce child support orders existing for the benefit of the state must be notified of his or her right to counsel and, if the person is indigent, of his or her right to court appointed counsel.[2] This well reasoned decision clearly disposes of these applications on the issue of the right to counsel and it will, therefore, not be necessary to determine the remaining issues.

The case of the plaintiff Philip Dube, Jr. falls squarely within the *Lake* holding. The state initiated contempt proceedings against Dube for failure to pay support orders for the minor children which had been entered for the benefit of the state. A hearing was held before the court on November 28, 1983. He was not advised of his right to counsel. Indeed, at the time of incarceration, he was indigent and unable to afford counsel. At the hearing, he was found to be in contempt and incarcerated. It is clear that the incarceration for civil contempt without the benefit of counsel violated Dube's federal and state constitutional rights to due process and the writ of habeas corpus should be granted.

The plaintiff Robert Paterson's case is somewhat different. His contempt proceedings were initiated by his former spouse. Paterson had been before the court on several occasions. He had originally been represented by Connecticut Legal Services, legal assistance, but due to budgetary restrictions, its attorneys could not continue to represent him.

---

[2] A temporary mandatory injunction to this effect was issued against all the judges of the Superior Court.

When the contempt proceedings were commenced against Paterson, he sought to have counsel, but the court ignored this request. It is clear that at the crucial time of the contempt hearing, Paterson did not have sufficient available assets to retain counsel. On November 28, 1983, the plaintiff Paterson was held in contempt for failure to pay child support and was incarcerated.

There is no logical reason why *Lake* should not apply to contempt proceedings initiated by a private person. The result is the same and that is incarceration for failure to comply with a court order of support. Surely, the requisite state action which is necessary to trigger the due process clauses is present when a person is deprived of his physical liberty by the court. It is crystal clear that a person may not be incarcerated by the state without first being advised of his constitutional right to counsel, and, if indigent, without having counsel appointed to represent him, whether the contempt proceedings are initiated by a private person or the state. See *Lassiter* v. *Department of Social Services,* 452 U.S. 18, 26–27, 101 S. Ct. 2153, 68 L. Ed. 2d 640, reh. denied, 453 U.S. 927, 102 S. Ct. 889, 69 L. Ed. 2d 1023 (1981); *United States* v. *Bobart Travel Agency, Inc.,* 699 F.2d 618, 620 (2d. Cir. 1983).

In the case of Paterson, he was not aware of this right to court appointed counsel nor given an opportunity to obtain counsel. Furthermore, counsel should have been appointed for him. Therefore, his incarceration for contempt on November 28, 1983 violated his constitutional right to due process, and the writ of habeas corpus should be granted.

The need for counsel is underscored in both of these cases. Civil contempt of court is coercive. *McTigue* v. *New London Education Assn.,* 164 Conn. 348, 353, 321 A.2d 462 (1973). It is clear that before a person can

be held in civil contempt, there must be an ability on his or her part to comply with the court order. *Shillitani* v. *United States,* 384 U.S. 364, 371, 86 S. Ct. 1531, 16 L. Ed. 2d 622 (1966). The trial court is obliged to weigh not merely that the order was issued and the defendant failed to comply with it, but also "whether or not there is actually a present ability to comply and whether failure so to do constitutes deliberate defiance which a jail term will break." *Maggio* v. *Zeitz,* 333 U.S. 56, 76, 68 S. Ct. 401, 92 L. Ed. 476 (1948). "The inability of the defendant to obey an order of the court, without fault on his part, is a good defense to a charge of contempt." *Tobey* v. *Tobey,* 165 Conn. 742, 746, 345 A.2d 21 (1974). Simply stated, there are no more debtor prisons even for those who are unable to support their children. See *Palumbo* v. *Manson,* 35 Conn. Sup. 130, 132, 400 A.2d 288 (1979).

In making the determination of whether there is a deliberate defiance of the court order, counsel is indispensible. "With an advocate, the risk of error can be reduced substantially. The lawyer can assist accurate factfinding, prepare and present defenses, present credible witnesses and evidence, monitor the actions of the court, make timely objections and motions, and take immediate actions if the court wrongfully confines his client. In cases where the defendant is able to arrange some form of payment, there is evidence that a lawyer can be far more effective than the defendant at presenting a plan and convincing the court to accept it. The lawyer is able to speak the language of the court, he can present a cogent and feasible payment scheme, and he can lend his credibility to the defendant's case. In his roles as both negotiator and advocate, therefore, the lawyer can prevent the most serious error risked in contempt proceedings, unlawful confinement, and he can help formulate coercive measures short of confinement to ensure that the children's need for support

is met." Monk, "The Indigent Defendant's Right to Court Appointed Counsel in Civil Contempt Proceedings for Nonpayment of Child Support," 39 U. Chi. L. Rev. (1983).

In sum, the court in each of these cases grants the writs of habeas corpus and orders that the plaintiffs Philip Dube, Jr. and Robert Paterson be discharged from the custody of the defendant, Raymond Lopes, Commissioner of Correction of the state of Connecticut.