**Kenneth JOHNSON, Plaintiff,**

v.

**The Honorable Richard ZURZ, Defendant.**

**and**

**Gregory MITCHELL, Plaintiff,**

v.

**The Honorable Richard V. ZURZ and Referee James Gill, Defendants.**

Nos. C 82–1534A, C 82–1805.

United States District Court, N.D. Ohio, E.D.

May 30, 1984.

**42**

Peter J. Krembs, Gruber, Moriarty, Fricke & Jaros, Cleveland, Ohio, for plaintiff Rocco Wine Distributors, Inc.

Michael C. Donovan, Janice Gui, Summit County Legal Aid Society, Akron, Ohio, for plaintiff Johnson.

Sanford J. Berger, Robert M. Fertel, Cleveland, Ohio, for plaintiff Mitchell.

Lynn C. Slaby, Summit County Pros. Atty., James L. Bickett, Chief Counsel, Civ. Div., Kevin R. Campbell, Asst. Pros. Atty., Akron, Ohio, for defendants Honorable Richard Zurz and Referee James Gill.

Louis A. Colombo, Marc. D. Flink, Baker & Hostetler, Cleveland, Ohio, for defendant Pleasant Valley Wine Company.

## MEMORANDUM OPINION AND ORDER

LAMBROS, District Judge.

This is an action pursuant to 42 U.S.C. § 1983 for the deprivation of plaintiff's rights as provided under the fourteenth amendment to the United States Constitution. Plaintiff Johnson is an indigent individual who has failed to make child-support payments pursuant to a state court order and, as such, has been and is subject to contempt proceedings before the defendant Presiding Judge, Domestic Relations Division, Summit County Court of Common Pleas.

Presently before the Court is plaintiff's motion to certify a class action, and cross motions for summary judgment. The facts pertinent to this claim are undisputed. In September, 1979 Judge Zurz ordered Johnson to pay child support. In May, 1982 Judge Zurz, in response to a motion for a show cause order filed by an assistant prosecuting attorney of the Summit County Bureau of Support, ordered that Johnson appear on June 16, 1982 and show cause why he should not be held in contempt of court. The show cause motion also sought a sentence of ten days incarceration in the event Johnson was held in contempt.

On June 1, 1982 Johnson filed a motion for appointment of counsel and represented in a supporting memorandum and affidavit that he was, in fact, indigent. On June 2, Judge Zurz denied Johnson's motion stating that the Domestic Relations Court was without legal authority to appoint counsel.

Two days before the scheduled contempt hearing Johnson filed this class action for injunctive and declaratory relief on his behalf and on behalf of others similarly situated claiming that, as he faced possible incarceration and was indigent, Judge Zurz was required to appoint counsel on his behalf. Johnson sought, and was granted, a temporary restraining order. Later an entry by stipulation of the parties was made granting a preliminary injunction on the same terms and conditions as the temporary restraining order. On June 21, the June 16 contempt hearing was dismissed by Judge Zurz.

### I.

■ It is first necessary to address the motion for class certification and the issues of standing and state action. The threshold question when considering whether an action should be certified as class action must necessarily be whether the plaintiff has standing to sue on his own behalf. *Simon v. Eastern Kentucky Welfare Rights Organization*, 426 U.S. 26, 96 S.Ct. 1917, 48 L.Ed.2d 450 (1976); *Warth v. Seldin*, 422 U.S. 490, 95 S.Ct. 2197, 45 L.Ed.2d 343 (1975). In order to meet the standing requirement a party must demonstrate the following:

"[T]hat he personally has suffered some actual or threatened injury as a result of the putatively illegal conduct of the defendant," *Gladstone, Realtors v. Village of Bellwood*, 441 US 91, 99, 60 L Ed 2d 66, 99 S Ct 1601 (1979), and that the

injury "fairly can be traced to the challenged action" and "is likely to be redressed by a favorable decision," *Simon v. Eastern Kentucky Welfare Rights Org.* 426 US 26, 38, 41, 48 L Ed 2d 450, 96 S Ct 1917 [1925] (1976).

*Valley Forge Christian College v. Americans United for Separation of Church and State,* 454 U.S. 464, 472, 102 S.Ct. 752, 758, 70 L.Ed.2d 700 (1982) (footnote omitted).

■ Defendant contends that plaintiff lacks standing to sue for a number of reasons, each of which this Court finds to be unconvincing. Defendant claims that no actual injury has taken place and therefore the requirement of standing has not been satisfied. It is clear, however, that the existence of a threat of injury on account of illegal conduct is sufficient to satisfy the injury portion of the standing requirement. Here, plaintiff has been and continues to be threatened with the deprivation of his liberty. The mere fact that Judge Zurz, shortly after this Court issued a restraining order, dismissed *sua sponte* the contempt hearing against Johnson is insufficient to overcome the remaining threat of incarceration. That dismissal was without prejudice and it is clear that Johnson may be cited with contempt at any time. Further, halting the challenged conduct would not, in any event, deprive this Court of reviewing that conduct where as here, plaintiff has standing.

It is well settled that a defendant's voluntary cessation of a challenged practice does not deprive a federal court of its power to determine the legality of the practice. Such abandonment is an important factor bearing on the question whether a court should exercise its power to enjoin the defendant from renewing the practice, but that is a matter relating to the exercise rather than the existence of judicial power. In this case the city's repeal of the objectionable language would not preclude it from reenacting precisely the same provision if the District Court's judgment were vacated.

*City of Mesquite v. Aladdin's Castle, Inc.,* 455 U.S. 283, 289, 102 S.Ct. 1070, 1074, 71 L.Ed.2d 152 (1982) (footnotes omitted). Likewise, there is nothing to preclude the defendant from continuing his conduct upon the removal of the preliminary injunction.

■ Defendant also argues that plaintiff is not subject to any real or immediate possibility of injury. While contempt proceedings traditionally lie within the discretion of the judge, Section 2705.05 of the Ohio Revised Code specifically provides that in contempt proceedings such as those in question a guilty individual is subject to punishment which includes imprisonment for up to ten days. Ohio Rev.Code Ann. § 2705.05. Further, the motion to show cause which led to the contempt proceedings specifically sought such a penalty. It is evident that Johnson and those who are similarly situated are under the scope of threatened and possible injury.

■ The Court concludes that plaintiff has the necessary standing to sue on his own behalf. Additionally, in order to invoke the jurisdiction of the federal court pursuant to the sixth and fourteenth amendments and 42 U.S.C. § 1983, the action complained of must be state action and not that of private persons. *Turner v. Impala Motors,* 503 F.2d 607 (6th Cir. 1974). The State of Ohio has prescribed potential penalties for contempt proceedings by statute, including incarceration. More significantly, however, the action complained of is not the civil contempt action, which is initiated by private persons, but the failure of a state judge, acting by and through his state authority, to fail to advise indigents of their right to appointed counsel and appoint such counsel when those indigents are threatened with possible incarceration pursuant to statute. Thus it is clear that the action in question herein is state action.

■ It has been stipulated by the parties that plaintiff's asserted class satisfies the requirements of Rule 23(a) of the Rules of Civil Procedure pertaining to class actions. The Court concurs in that statement and as the requirements of Rule 23(b)(2) are also satisfied, plaintiff's motion to certify a

class is hereby granted and this action shall proceed as a certified class action, said class of plaintiffs to consist of all indigent defendants who are unable to afford private counsel and who now, or will in the future, face potential incarceration as a result of being summoned before the Domestic Relations Division of the Summit County Court of Common Pleas to show why they should not be held in contempt of court for failure to pay court ordered child-support.

## II.

▮▮▮ Defendant raises the doctrines of abstention, under *Younger v. Harris*, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971) and its progeny, and judicial immunity in support of his motion. The abstention doctrine as articulated in *Younger* is based on the proposition that in the absence of extraordinary circumstances principles of federalism, comity and equity require that federal courts abstain from unduly interfering with state criminal court proceedings. This principle has been extended and applied to certain civil actions. *See Judice v. Vail*, 430 U.S. 327, 97 S.Ct. 1211, 51 L.Ed.2d 376 (1977); *Huffman v. Pursue, Ltd.*, 420 U.S. 592, 95 S.Ct. 1200, 43 L.Ed.2d 482 (1975). The purpose of the *Younger* abstention doctrine is to prevent undue interference in legitimate state functions by the federal court. A basic premise of the application of this doctrine, however, is that the plaintiff has recourse to the state appellate process to raise his federal claim. *Younger, supra* 401 U.S. at 41, 45, 91 S.Ct. at 749, 751. In *Parker v. Turner*, 626 F.2d 1 (6th Cir.1980), the United States Court of Appeals for the Sixth Circuit, considering alleged due process violations by state court judges similar to the claim made in this case, held that the federal court should abstain as the state courts were available to address the unconstitutional conduct in question. The Court specifically noted, however:

> Should the Tennessee appellate courts be unable or unwilling to correct continuing unconstitutional conduct by the Juvenile Court judges, plaintiffs would then be in

a position of showing "exceptional circumstances" which would warrant federal injunctive relief.

Id. at 10 (footnote omitted).

▮▮▮ It is clear that the Ohio Supreme Court has spoken to the conduct in question herein and held that plaintiff and the members of plaintiff's class have no right to counsel in "civil" contempt proceedings. *In re Calhoun*, 47 Ohio St.2d 15, 350 N.E.2d 665 (1976). Accordingly, plaintiff and plaintiff's class are effectively precluded from seeking to correct the conduct in question by appeals within the state court system and, therefore, this Court may consider the constitutionality or unconstitutionality of the conduct herein. The fact that *In re Calhoun* relied only on the sixth amendment is irrelevant in that the Ohio Supreme Court must necessarily have rejected any fourteenth amendment right to counsel under similar circumstances. *Accord, Mastin v. Fellerhoff*, 526 F.Supp. 969 (S.D.Ohio 1981). Where, as here, plaintiff and plaintiff's class have no adequate state court avenue of redress and such a vital constitutional interest is at stake, "extraordinary circumstances" exist and this Court will not abstain

▮▮▮ A vast majority of courts have recognized that where declaratory or injunctive relief is sought, rather than monetary relief, judges are not immune from 42 U.S.C. § 1983 suits. *See Allen v. Burke*, 690 F.2d 376 (4th Cir.1982); *Tarter v. Hury*, 646 F.2d 1010 (5th Cir.1981); *Harris v. Harvey*, 605 F.2d 330, 335 n. 7 (7th Cir.1979), *cert. denied* 445 U.S. 938, 100 S.Ct. 1331, 63 L.Ed.2d 772 (1980); *Heimbach v. Village of Lyons*, 597 F.2d 344 (2nd Cir.1979); *Slavin v. Curry*, 574 F.2d 1256 (5th Cir.1978), *reh. denied* 583 F.2d 779; *Hansen v. Ahlgrimm*, 520 F.2d 768, 769 (7th Cir.1975); *Timmerman v. Brown*, 528 F.2d 811 (4th Cir.1975), *rev'd on other grounds sub nom, Leeke v. Timmerman*, 454 U.S. 83, 102 S.Ct. 69, 70 L.Ed.2d 65 (1981); *Conover v. Montemuro*, 477 F.2d 1073 (3d Cir.1973); *Littleton v. Berbling*, 468 F.2d 389 (7th Cir.1972), *rev'd on other*

*grounds* 414 U.S. 488, 94 S.Ct. 669, 38 L.Ed.2d 674, *vacated on other grounds* 414 U.S. 514, 94 S.Ct. 685, 38 L.Ed.2d 694 (1974). *See also, Shipp v. Todd*, 568 F.2d 133 (9th Cir.1978); *Briggs v. Goodwin*, 569 F.2d 10 (D.C.Cir.1977).

> [N]o sound reason exists for holding that federal courts should not have the power to issue injunctive relief against the commission of acts in violation of a plaintiff's civil rights by state judges acting in their official capacity.

*Erdman v. Stevens*, 458 F.2d 1205, 1208 (2nd Cir.1972), *cert. denied*, 409 U.S. 889, 93 S.Ct. 126, 34 L.Ed.2d 147 (1972). Defendant, therefore, is not immune from this suit and, having jurisdiction, the Court will proceed to the merits of this case.

### III.

When approaching any due process claim a court must first determine whether a protected interest is at stake. *Board of Regents v. Roth*, 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972). Here plaintiff and members of plaintiff's class are threatened with a deprivation of physical liberty by the Domestic Relations Court. Thus, the fourteenth amendment is clearly implicated and the Court must address what process will protect plaintiffs' rights.

It is evident that the presence of counsel to represent individuals who appear in court and face incarceration is a vital element in preserving due process. In *Gideon v. Wainwright*, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963), the United States Supreme Court held that a criminal defendant, charged with a felony but unable to afford counsel, is entitled to have counsel appointed for him by the state. The Court noted that such an individual "cannot be assured a fair trial unless counsel is provided for him." *Id.* at 344, 83 S.Ct. at 796.

In *Argersinger v. Hamlin*, 407 U.S. 25, 92 S.Ct. 2006, 32 L.Ed.2d 530 (1972), the Court held:

> [A]bsent a knowing and intelligent waiver, no person may be imprisoned for any offense, whether classified as petty, misdemeanor, or felony, unless he was represented by counsel at his trial.

*Id.* at 37, 92 S.Ct. at 2012 (footnote omitted). Subsequently, the Supreme Court held, "that the Sixth and Fourteenth Amendments to the United States Constitution require only that no indigent criminal defendant be sentenced to a term of imprisonment unless the State has afforded him the right to assistance of appointed counsel in his defense." *Scott v. Illinois*, 440 U.S. 367, 373–74, 99 S.Ct. 1158, 1162, 59 L.Ed.2d 383 (1979).

After a discussion of the precedent on an indigent's right to appointed counsel, including *Scott*, the Court in *Lassiter v. Department of Social Services*, 452 U.S. 18, 101 S.Ct. 2153, 68 L.Ed.2d 640 (1981), summarized as follows:

> In sum, the Court's precedents speak with one voice about what "fundamental fairness" has meant when the Court has considered the right to appointed counsel; and we thus draw from them the presumption that an indigent litigant has a right to appointed counsel only *when, if he loses, he may be deprived of his physical liberty.* It is against this presumption that all the other elements in the due process decision must be measured.

*Id.* at 26–27, 101 S.Ct. at 2159 (emphasis added).

The issue in *Lassiter* was whether counsel should have been appointed for an indigent parent at a parental-rights termination hearing. There the Court balanced the three elements of *Mathews v. Eldridge*, 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18 (1975), in deciding what due process requires, against each other and then as "against the presumption that there is a right to appointed counsel only where the indigent, if he is unsuccessful, may lose his personal freedom." 452 U.S. at 27, 101 S.Ct. at 2159. In *Lassiter* there was no potential loss of the indigent's liberty, and the Court determined that on the facts before it, a case-by-case evaluation was necessary to determine whether counsel

should be appointed in a parental-rights termination proceeding. The Court rephrased its inquiry, saying:

> The dispositive question, which must now be addressed, is whether the three Eldridge factors, when weighed against the presumption that there is no right to appointed counsel in the absence of at least a potential deprivation of physical liberty, suffice to rebut that presumption and thus to lead to the conclusion that the Due Process Clause requires the appointment of counsel when a State seeks to terminate an indigent's parental status.

*Id.* at 31, 101 S.Ct. at 2161.

■ Because there is the actual possibility of incarceration, this Court need not evaluate claims such as plaintiff's on a case-by-case basis. *Martin v. Fellerhoff, supra.* In any event, however, where as here the plaintiff and plaintiff's class are faced with incarceration, the liberty interests involved far outweigh the interests of the state. The fact that the proceeding at issue is considered to be a "civil" matter rather than "criminal" is irrelevant as the concern is with the defendant's authorization and authority to deprive plaintiff's and class member's physical liberty.

■ Physical liberty is and has been of vital interest to the people of the United States from the time of our founding fathers. That this liberty interest may only be taken from an individual with due process of law is fundamental to our system of government. Accordingly, this Court holds that where an indigent is ordered to appear and show cause why he should not be held in contempt of court for failure to pay child support and is subject to incarceration, due process requires that the indigent be informed of his right to appointed counsel and, after inquiry and upon request, such counsel be appointed before the indigent appears to answer the show cause order.

The Court is cognizant of the cost of compliance with this decision and is not unsympathetic. But the interest in preserving the right to liberty as provided by the United States Constitution through due process of law does not come without cost. Anything worth having is worth paying for.

Accordingly, plaintiff's motion for summary judgment is granted. Defendant's motion for summary judgment is denied. In accord with the holding of this Court, the defendant is hereby permanently enjoined.

On February 8, 1983, the Honorable Sam H. Bell, United States District Judge for this District, Eastern Division, severed and consolidated the claims of Gregory Mitchell against the Honorable Richard Zurz and James Gill, in *Kelly v. Honorable Herbert R. Whiting*, Case No. C 82-1805, with this action for the purpose of pretrial hearing.

The issues raised by Mitchell are identical to those raised by the plaintiff herein. Factually, the cases are virtually identical with the exception that Referee Gill failed to inform Mitchell of his right to counsel or to have counsel appointed on his behalf. Additionally, upon recommendation of Referee Gill, Judge Zurz sentenced Mitchell to imprisonment and issued an arrest warrant. Said warrant was recalled after Mitchell initiated this action, and Mitchell has not been incarcerated. Plaintiff Mitchell has moved for summary judgment, incorporating the brief of plaintiff Johnson. Referee Gill and Judge Zurz have moved for summary judgment.

Having granted class certification in Case No. C 82-1534A, and noting that the claims of Mitchell establish his membership in the class defined above, plaintiff Mitchell's motion for summary judgment is also granted. Defendants' motion for summary judgment is denied.

In sum, plaintiff Johnson's motion to certify a class action is granted. Motions on behalf of plaintiffs Johnson and Mitchell for summary judgment are granted. The motion for summary judgment on behalf of the defendants in both actions is denied. The defendants are permanently enjoined from action inconsistent with the directives of this memorandum opinion and order.

This order terminates Case No. C 82–1534A and terminates Case No. C 82–1805 only as to the claims of plaintiff Mitchell against Referee James Gill and the Honorable Richard V. Zurz.

IT IS SO ORDERED.