Costs of this proceeding are assessed against the Respondent.

All Justices concur.

---

**In the Matter of Isaac L. CONLEY.**

**No. 10S00–8604–DI–382.**

Supreme Court of Indiana.

July 2, 1987.

### ORDER ACCEPTING RESIGNATION

Comes now the Respondent, Isaac L. Conley, and tenders his Affidavit of Resignation pursuant to Admission and Discipline Rule 23, Section 17.

And this Court, being duly advised, now finds that the Respondent's affidavit meets the necessary elements set forth in Admission and Discipline Rule 23, Section 17. Accordingly, this Court now accepts Respondent's resignation which is to be effective immediately. In light of Respondent's resignation, we find further that this matter has become moot and should be dismissed as such.

IT IS, THEREFORE, ORDERED, ADJUDGED AND DECREED that Isaac L. Conley is hereby removed as a member of

**In re the MARRIAGE OF John STARIHA, Respondent-Appellant,**

**and**

**Rebecca Stariha, Petitioner-Appellee.**

**No. 83A01–8605–CV–144.**

Court of Appeals of Indiana, First District.

June 29, 1987.

Kenneth J. Falk, Sandra D. Leek, Legal Services Organization of Indiana, Inc., Indianapolis, for respondent-appellant.

Joe E. Beardsley, Beardsley & Stengel, Clinton, for petitioner-appellee.

RATLIFF, Chief Judge.

## STATEMENT OF THE CASE

John Stariha, an indigent person, appeals his being adjudged in contempt for failure to pay child support where he was incarcerated without the assistance of or being informed of the right to appointed counsel. We reverse.

## FACTS

On June 15, 1984, John and Rebecca Stariha were divorced by order of the Vermillion Circuit Court. John was ordered to pay $25.00 per week for support of his minor daughter. John did not make these payments. Therefore, on February 18, 1986, Rebecca filed an affidavit for Rule to Show Cause why he should not be held in contempt.

On March 11, 1986, the trial court conducted a hearing. At the time of the hearing, John had no money and was not working. John had held odd jobs, although the record was unclear as to when he had last worked. However, it was clear that he had not held a steady job for two years. In the last year he had a total gross income of $428.00. At the time of the hearing, John was living with his mother, who was helping to support him.

John was not represented by counsel at the hearing. John indicated to the trial court that he had tried to retain an attorney but was unsuccessful and that he did not have sufficient income or resources to hire an attorney. The trial court did not inform John of any right to counsel. Following the hearing, the trial court entered an order finding John in contempt of court for failure to pay support and sentenced him to thirty days in the county jail, which he has served, and ordered him to pay

Rebecca's attorney fees. Thereafter, John perfected this appeal.

## ISSUE

1. Whether the trial court erred in finding John Stariha, an indigent, in contempt of court for failure to pay support and incarcerating him for this contempt where John was unrepresented by counsel and the trial court did not advise him of such a right or appoint counsel for him.

2. Whether the present appeal is moot.

## DISCUSSION AND DECISION

*Issue One*

This case essentially involves the possible due process rights owed to John Stariha or others similarly situated. The Fourteenth Amendment to the United States Constitution requires that no person shall be deprived of life, liberty, or property without due process of law and equal protection of the laws. However, for all its consequences, "due process" has never been, and perhaps can never be, precisely defined. *Lassiter v. Department of Social Services* (1981), 452 U.S. 18, 101 S.Ct. 2153, 68 L.Ed.2d 640. The United States Supreme Court has noted that unlike some other legal rules, due process "is not a technical conception with a fixed content unrelated to time, place and circumstances." *Lassiter*, at 24, 101 S.Ct. at 2158, 68 L.Ed.2d at 648, quoting *Cafeteria Workers Union v. McElroy* (1961), 367 U.S. 886, 895, 81 S.Ct. 1743, 1748, 6 L.Ed.2d 1230, 1236. Instead, the phrase expresses the requirement of "fundamental fairness," a requirement whose meaning can be as opaque as its importance is lofty. *Lassiter*, 452 U.S. at 24, 101 S.Ct. at 2158, 68 L.Ed.2d at 648. Applying the Due Process Clause is thus an uncertain enterprise which must determine what "fundamental fairness" consists of in a particular situation by first considering relevant precedents and then by assessing the several interests that are at stake. *Id.* The first question that must be addressed in deciding any due process claim is whether there is a protected interest at stake. *Board of Regents v. Roth* (1972), 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548. The second, and more difficult, question is what process is necessary to protect a plaintiff's fundamental rights.

The Supreme Court in *Gideon v. Wainwright* (1963), 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799, held that representation by counsel is essential to protect the fundamental rights of life and liberty of an accused in a criminal prosecution, and that counsel must therefore be appointed if the defendant is indigent. *Id.*, at 342–43, 83 S.Ct. at 795–96, 9 L.Ed.2d at 804–805. This rationale was later found to extend to any criminal prosecution, no matter how petty, whenever a defendant stands to be deprived of his liberty as a result of the proceeding. *Argersinger v. Hamlin* (1971), 407 U.S. 25, 32, 92 S.Ct. 2006, 2010, 32 L.Ed.2d 530, 535; *see Lassiter; Johnson v. Zurz* (N.D.Ohio 1984), 596 F.Supp. 39, 45; *Mastin v. Fellerhoff* (S.D.Ohio 1981), 526 F.Supp. 969, 971. The *Argersinger* court noted that imprisonment is never trivial to the person being deprived of his liberty and it is the result, not the nature of the particular offense, that requires appointment of counsel. *Id.* 407 U.S. at 37, 92 S.Ct. at 2012, 32 L.Ed.2d at 538. Thus, it is a defendant's interest in personal freedom, and not simply the special Sixth and Fourteenth Amendments right to counsel in criminal cases which triggers the right to appointed counsel.[1] To meet due process requirements, therefore, appointed counsel has been required in certain circumstances, regardless of whether the action is labeled criminal or civil. *In re Gault* (1967), 387 U.S. 1, 87 S.Ct. 1428, 18 L.Ed.2d 527 (juvenile delinquency determi-

---

1. The proposition that it is a defendant's interest in personal freedom that actually triggers the right to appointed counsel is demonstrated by the Supreme Court's announcement " 'the Due Process Clause of the Fourteenth Amendment requires that in respect of proceedings to determine delinquency which may result in commit-ment to an institution in which the juvenile's freedom is curtailed' the juvenile has a right to appointed counsel even though those proceedings may be styled 'civil' and not 'criminal' ". *Lassiter*, at 25, 101 S.Ct. at 2158–59, 68 L.Ed.2d at 648, quoting *In re Gault* (1966), 387 U.S. 1, 41, 87 S.Ct. 1428, 1451, 18 L.Ed.2d 527, 554.

nation); *Specht v. Patterson* (1967), 386 U.S. 605, 87 S.Ct. 1209, 18 L.Ed.2d 326 (sentencing post conviction); *Kennedy v. Wood* (1982), Ind.App., 439 N.E.2d 1367, 1369 (paternity determination), *trans. denied; F.J. v. State* (1980), Ind.App., 411 N.E.2d 372, 377 (mental commitment proceedings), *trans. denied.*

The Supreme Court focused on the relationship between a person's fundamental right to liberty and the Sixth and Fourteenth Amendments' right to counsel in *Lassiter v. Department of Social Services* (1981), 452 U.S. 18, 101 S.Ct. 2153, 68 L.Ed.2d 640. In *Lassiter,* the state of North Carolina had terminated the petitioner's parental rights due to her lack of concern for her child's care and welfare. Petitioner argued that, because she was indigent, the Fourteenth Amendment required the state to appoint counsel to represent her at the termination hearing. The Court found that there is a presumption "that an indigent litigant has a right to appointed counsel only when, if he loses, he may be deprived of his physical liberty." *Id.* at 26–27, 101 S.Ct. at 2159, 68 L.Ed.2d at 649. Because the petitioner was not threatened with loss of her physical liberty, the Court found that the factors set forth in *Mathews v. Eldridge* (1976), 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18, should be considered and then weighed against the above presumption to determine whether the Fourteenth Amendment requires the state to appoint counsel in parental termination hearings. *Lassiter,* 452 U.S. at 27, 101 S.Ct. at 2159, 68 L.Ed.2d at 649.

*Mathews v. Eldridge* sets out three factors which must be considered in determining what due process requires in a particular case: the private interests at stake, the government's interest, and the risk that the procedures used will lead to erroneous decisions. *Id.* 424 U.S. at 335, 96 S.Ct. at 903, 47 L.Ed.2d at 18. The *Lassiter* court found that these three factors balanced in favor of a right to appointed counsel, but did not overcome the presumption that a litigant is not entitled to appointed counsel unless threatened with loss of physical liberty. Therefore, the Court adopted the standard set forth in *Gagnon v. Scarpelli*

(1972), 411 U.S. 778, 787–88, 93 S.Ct. 1756, 1762–63, 36 L.Ed.2d 656, 664–65, providing for a case-by-case determination of a litigant's right to appointed counsel when the right cannot be deemed to be absolute. *Lassiter,* 452 U.S. at 31–32, 101 S.Ct. at 2162, 68 L.Ed.2d at 652.

Thus, in a case like the present one, where a person is being held in contempt for failure to pay child support, it appears that we must first determine whether a defendant's physical liberty is at stake. If not, then, according to *Lassiter,* a court must analyze the three factors set forth in *Eldridge* and then balance these with the presumption against appointed counsel.

This notion is supported by case law in the federal courts and other jurisdictions. In *Mastin v. Fellerhoff* (S.D.Ohio 1981), 526 F.Supp. 969, Mastin was found in contempt of a court order for nonpayment of child support and incarcerated. Mastin had not been represented by counsel at the hearing though he had requested appointment of an attorney as he could not afford one. The trial court refused his request on the grounds that the proceeding was not "criminal" and thus he had no right to appointed counsel. The U.S. District Court, after analyzing the above applicable case law, disposed of the state's argument seeking a case-by-case approach stating: "It is clear to this Court that a state may not deprive a person of his physical liberty unless that person is represented by counsel, no matter what the nature of the proceeding." *Id.* at 973. The court added:

"To characterize a proceeding as civil rather than criminal is a distinction without a difference if the end result is loss of physical liberty. Appointment of counsel is an absolute requirement of due process whenever the proceeding may result in imprisonment of that defendant (citations omitted). We believe the balancing factors set forth in *Eldridge* apply only in cases where the right is not absolute, and the court must determine whether there is a right to counsel under a particular set of facts."

*Id.* This holding has been repeated in other federal courts. *Johnson v. Zurz* (N.D.

Ohio 1984), 596 F.Supp. 39, involved a class action brought by an indigent who was the subject of contempt proceedings for failure to make child support payments. The federal court found that because there was the actual possibility of incarceration, it did not need to evaluate the claim on a case-by-case basis adding that where a plaintiff, and his class, are faced with incarceration, the liberty interests involved far outweigh the interests of the state. The court added that the fact the proceeding was considered "civil" in nature rather than "criminal" was irrelevant as the concern is with the state or court's authorization and authority to deprive the plaintiff of his physical liberty. Accordingly, the court held that "where an indigent is ordered to appear and show cause why he should not be held in contempt of court for failure to pay child support and is subject to incarceration, due process requires that the indigent be informed of his right to appointed counsel and, after inquiry and upon request, such counsel be appointed before the indigent appears to answer the show cause order." *Id.* at 46. *See Lake v. Speziale* (D.Conn. 1984), 580 F.Supp. 1318 (Procedural due process requires that a defendant who is faced with potential incarceration in a civil contempt proceeding to enforce child support orders existing for the benefit of the state must be notified of his or her right to counsel and, if indigent, of his or her right to court appointed counsel). *See also Ridgeway v. Baker* (5th Cir.1983), 720 F.2d 1409 (right to counsel exists where deprivation of liberty may result from proceeding); *Sevier v. Turner* (6th Cir.1984), 742 F.2d 262 (assistance of counsel required in non-support contempt proceedings which result in incarceration); *Walker v. McLain* (10th Cir.1985), 768 F.2d 1181 (at a minimum, due process requires a court to inform indigent defendant threatened with incarceration for civil contempt for non-support of right to appointed counsel), *cert. denied* —— U.S. ——, 106 S.Ct. 805, 88 L.Ed.2d 781; *Cobb v. Green* (N.D.Mich.1983), 574 F.Supp. 256 (preliminary injunction preventing imprisonment for contempt of indigent parent for non-payment of child support); *Padilla v. Padilla* (1982), Colo.App., 645 P.2d 1327

(right to appointed counsel extended to father in contempt proceeding for non-payment of support regardless of characterization as civil or criminal); *Dube v. Lopes* (1984), 40 Conn.Sup. 111, 481 A.2d 1293 (incarceration for civil contempt for non-payment of child support without benefit of counsel violated due process rights of indigent father not advised of right); *Rutherford v. Rutherford* (1983), 296 Md. 347, 464 A.2d 228 (indigent defendant in civil contempt proceedings had right to appointed counsel where incarceration involved); *Cox v. Slama* (1984), Minn., 355 N.W.2d 401 (right to appointed counsel if indigent person involved in back support proceeding where incarceration is real possibility); *Tetro v. Tetro* (1975), Wash., 544 P.2d 17 (right to appointed counsel in contempt proceeding whether civil or criminal where incarceration may occur). Clearly then, under *Lassiter* and its federal and state progeny, an indigent defendant facing possible incarceration for contempt for failure to pay child support has a due process right to appointed counsel and a right to be informed of the same.

■ Therefore, we hold that where the possibility exists that an indigent defendant may be incarcerated for contempt for failure to pay child support he or she has a right to appointed counsel and to be informed of that right prior to commencement of the contempt hearing.

■ Thus, in the present case, John was denied his due process right to counsel. Under *Lassiter*, the first step in determining an indigent's right to appointed counsel is to decide whether he may lose his physical liberty if he loses the litigation. If the litigant does not face the risk, then a court must address the *Eldridge* factors to reach a determination. However, here there is no need to go into such an in-depth analysis. *Johnson, supra; Mastin, supra.* John not only risked the possibility of losing his physical liberty but was actually incarcerated for the contempt. John was not represented by counsel, appointed or otherwise, at the hearing finding him in contempt for failure to pay child support, nor was he advised of this right. Given the

plethora of authority cited above, it is clear that John, as an indigent, was denied his due process right to appointed counsel at the contempt hearing.

Rebecca, however, argues that the present case did not involve state action thereby necessitating the right to appointed counsel. Rebecca's point is well-taken in that the Due Process Clause applies to state action, but offers no shield against private conduct regardless of how wrongful such private conduct may be. *Jackson v. Metropolitan Edison Co.* (1974), 419 U.S. 345, 95 S.Ct. 449, 42 L.Ed.2d 477; *Renforth v. Fayette Memorial Hospital Ass'n, Inc.* (1978), 178 Ind.App. 475, 480, 383 N.E.2d 368, 372, *cert. denied* (1979) 444 U.S. 930, 100 S.Ct. 273, 62 L.Ed.2d 187. As the Supreme Court has noted:

> "... While the principle that private action is immune from the restrictions of the Fourteenth Amendment is well established and easily stated, the question whether particular conduct is 'private,' on the one hand, or 'state action,' on the other, frequently admits of no easy answer. ..."

*Jackson*, 419 U.S. at 349–50, 95 S.Ct. at 453, 42 L.Ed.2d at 483.

The impetus for the challenged activity need not originate with the state. State action may be found if the state simply enforces the activity which originates privately. *Moose Lodge No. 107 v. Irvis* (1972), 407 U.S. 163, 92 S.Ct. 1965, 32 L.Ed.2d 627; *Renforth,* 178 Ind.App. at 481, 383 N.E.2d at 372. A nexus must exist, however, between the governmental involvement and the particular activity being challenged, *Doe v. Bellin Memorial Hospital* (7th Cir.1973), 479 F.2d 756, or the evidence must demonstrate that the state "has so far insinuated itself into a position of interdependence" with the private institution that the state has become "a joint participant" in the challenged activity. *Burton v. Wilmington Parking Authority* (1961), 365 U.S. 715, 725, 81 S.Ct. 856, 862, 6 L.Ed.2d 45, 52.

It is difficult to imagine how the present case does not involve state action. Admittedly, Rebecca initiated this action as a private individual. However, the trial court found John in contempt for failure to pay child support pursuant to Rebecca's motion and sentenced him to thirty days. Certainly, John's incarceration, depriving him of his physical liberty for thirty days, amounted to state action. The court enforced a contempt proceeding that was initiated privately. In a factually similar case, an indigent Connecticut father was incarcerated for civil contempt, without the benefit of counsel, for failure to pay child support. *Dube v. Lopes* (1984), 40 Conn. Sup. 111, 481 A.2d 1293. Noting that the contempt proceeding was initiated by his former spouse the Connecticut court went on to state:

> "There is no logical reason why *Lake* should not apply to contempt proceedings initiated by a private person. The result is the same and that is incarceration for failure to comply with a court order of support. Surely, the requisite state action which is necessary to trigger the due process clause is present when a person is deprived of his physical liberty by the court. It is crystal clear that a person may not be incarcerated by the state without first being advised of his constitutional right to counsel, and, if indigent, without having counsel appointed to represent him, whether the contempt proceedings are initiated by a private person or the state."

*Id.* at ——, 481 A.2d at 1294. Here, there is a definite nexus between Rebecca's complaint for failure to pay child support and the trial court's finding of contempt and incarceration of John for the same activity. Rebecca's argument that this case lacks state action, thereby alleviating the need to appoint counsel for John, is meritless.

*Issue Two*

▬▬ Rebecca argues in the alternative that this appeal is moot because John has fully served the sentence imposed in the contempt hearing. It is standard practice in this state to dismiss an appeal when it becomes unnecessary to decide the question presented. *Bartholomew County Hospital v. Ryan* (1982), Ind.App., 440 N.E.2d 754, 757, *trans. denied.* An issue

is deemed moot when it is "'no longer "live" or when the parties lack a legally cognizable interest in the outcome'" of its resolution. *Bartholomew*, at 757, quoting *U.S. Parole Commission v. Geraghty* (1980), 445 U.S. 388, 396, 100 S.Ct. 1202, 1208, 63 L.Ed.2d 479, 490. Thus, where the principal questions at issue cease to be of real controversy between the parties, the errors assigned become moot questions and this court will not retain jurisdiction to decide them. *Bartholomew*, at 757; *Aeronautics Commission of Indiana v. State ex rel. Emmis Broadcasting Corp.* (1982), Ind.App., 440 N.E.2d 700, 703, *trans. denied.* In addition, when we are unable to provide effective relief upon an issue, that issue is deemed moot, and we will not reverse a trial court's determination "'where absolutely no change in the status quo will result.'" *Bartholomew*, at 757, quoting *Krochta v. State* (1978), 175 Ind.App. 436, 439, 372 N.E.2d 475, 478.

■ However, the present appeal is not moot. As the Supreme Court has noted, a criminal conviction remains a live controversy, even after the sentence is served, because it often leads to collateral consequences. *Sibron v. New York* (1968), 392 U.S. 40, 88 S.Ct. 1889, 20 L.Ed.2d 917. The *Sibron* court noted that "it is far better to eliminate the source of a potential legal disability than to require the citizen to suffer the possibly unjustified consequence of the disability itself for an indefinite period of time." *Id.* at 57, 88 S.Ct. at 1899, 20 L.Ed.2d at 931. Here John was found in contempt for failure to pay child support and was incarcerated. He has been found neglectful of his child's welfare and jailed because of it. This creates a stigma which carries with it possible collateral consequences. As the Tenth Circuit noted in a case finding a right to appointed counsel in contempt proceedings where the petitioner had served his jail time: "[s]ince petitioner may suffer collateral consequences following from his contempt conviction, his case is not moot ... The state may, for example, rely on the finding of contempt in determining child visitation rights or in other child support proceeding ... Thus, we find the case not to be moot despite petitioner's

release from confinement." *Walker v. McLain* (10th Cir.1985), 768 F.2d 1181, 1183; see also *Ridgeway v. Baker* (5th Cir.1983), 720 F.2d 1409, 1411–12 n. 2 (collateral consequences prevent finding of mootness in challenge by father to incarceration for contempt for failure to pay support despite release from incarceration); *Shock v. Sheppard* (1982), Ohio App., 453 N.E.2d 1292 (contempt conviction reversed and jail term vacated where indigent defendant was not afforded right to counsel). Clearly, John's conviction and sentence, though served, will have collateral consequences and this case is, therefore, not moot.

In addition, this case falls under the public interest exception to the mootness doctrine. The public interest exception may be invoked upon the confluence of three elements: the issue involves a question of great public importance which is likely to recur in a context which will continue to evade review. *Bartholomew*, at 759. Here, John was incarcerated for thirty days, a period that expired long before his case could be reviewed by this court. It is possible that John could be subjected to the same conduct again and face incarceration without the benefit of counsel, unless we address the merits of this case. Moreover, the question of due process rights involved in this case is one of significant import. Thus, the issue in the present case is one of great public importance which is likely to recur is a context which will continue to evade review and is therefore not moot.

Judgment of the trial court reversed.

NEAL, J., concurs.

STATON, J., concurs with separate opinion.

STATON, Judge, concurring.

I concur with the Majority that an indigent defendant has a due process right to legal counsel where there is a possibility that he may be incarcerated. However, I am troubled with the mechanics of identifying the fundamental right in civil cases prior to a hearing or trial. The presump-

tion is that it is not necessary to appoint counsel in civil cases. *Lassiter v. Department of Social Services* (1981), 452 U.S. 18, 101 S.Ct. 2153, 68 L.Ed.2d 640; *Kennedy v. Wood* (1982), Ind.App., 439 N.E.2d 1367. To avoid the unnecessary waste of judicial time as well as other resources, some guidelines should be offered to the trial court.

When an indigent defendant appears before the trial court, the trial judge would be well advised to review the pleadings before him and the applicable law to determine whether the possibility of incarceration exists. If the trial judge determines that the possibility exists, he should satisfy himself of the indigency and appoint legal counsel for the defendant. If the defendant insists on going *pro se* then the trial judge should employ the same or similar procedure used for criminal defendants. See *Shelton v. State* (1979), 181 Ind.App. 50, 390 N.E.2d 1048, *trans. den.*