**David D. WEBSTER, Appellant–Defendant,**

v.

**STATE of Indiana, Appellee–Plaintiff.**

**No. 29A02–9603–CR–178.**

Court of Appeals of Indiana.

Nov. 22, 1996.

Transfer Denied Jan. 29, 1997.

**510**

Eric J. Benner and Tina M. Cooper, Richards, Boje & Pickering, Noblesville, for Appellant–Defendant.

Pamela Carter, Attorney General of Indiana and Priscilla J. Fossum, Deputy Attorney General, Office of Attorney General, Indianapolis, for Appellee–Plaintiff.

**OPINION**

GARRARD, Judge.

David Webster ("Webster") appeals the trial court's denial of his motion to dismiss his criminal invasion of privacy charge, claiming that the charge constitutes double jeopardy.

**FACTS**

On February 16, 1995, Webster was charged with invasion of privacy[1] for violating the temporary restraining order that his ex-wife Linda Snovak–Webster ("Wife") held against him. Webster violated the restraining order when he appeared at the residence of Wife in the early morning hours of February 12, 1995. On March 16, 1995, Wife filed a Motion for Rule to Show Cause why Webster should not be held in contempt for his violation of the restraining order on February 12, 1995. At that hearing, the Hamilton Superior Court III ("Contempt Court")

---

1. The Information charging Webster states in the caption that he was charged under I.C. § 35–46–1–15.1(2), but following the language of the Information it appears that the charge was based upon I.C. § 35–46–1–15.1(3). The difference between the two sections is immaterial because both subsections are Class B misdemeanors.

found that Webster had violated the restraining order by his presence at Wife's residence on February 12, 1995, and was therefore in contempt. The court sentenced Webster to ninety days in jail, but stayed the sentence pending Webster's continued compliance with the restraining order and certain conditions imposed by the court.

On January 30, 1996, Webster filed a motion to dismiss his invasion of privacy charge with the Hamilton County Superior Court IV ("Criminal Court"). Webster argued in his motion that the invasion of privacy charge constituted double jeopardy because he had already been punished for violating the restraining order by the contempt sanction. The trial court denied this motion on February 20, 1996. On the motion of Webster, the trial court certified this matter for interlocutory appeal on March 18, 1996, and the present interlocutory appeal ensued.

## ISSUE

Webster presents one issue for appeal which we restate as:

I.  Whether the contempt sanction for violating the temporary restraining order constitutes a jeopardy for the purposes of double jeopardy analysis.

## DISCUSSION

Webster claims that the invasion of privacy charge constitutes double jeopardy under the Fifth Amendment to the Constitution and Article I, section 14 of the Indiana Constitution because he has already been punished for the same offense by the contempt sanction. "The Double Jeopardy Clause embraces three separate but related prohibitions: (1) a rule barring reprosecution for the same offense after acquittal; (2) a rule barring reprosecution for the same offense after conviction; and (3) a rule barring multiple punishment for the same offense." *Finney v. State*, 491 N.E.2d 1029, 1032 (Ind.Ct.App. 1986). This appeal deals solely with the prohibition against multiple punishments for the same offense.

■ When analyzing two offenses for a possible double jeopardy violation, we first look to see if one of the offenses requires proof of an additional fact that the other offense does not. *Jackson v. State*, 643 N.E.2d 905, 908 (Ind.Ct.App.1994), *trans. denied*. We must also examine the factual basis for the charges alleged in the information. *Id.* The information charging Webster with invasion of privacy is based upon Webster's violation of the restraining order. (R. 10) Webster's contempt finding was also based on his violation of the restraining order Wife held against him.[2] Both the contempt finding and the invasion of privacy charge stemmed from the same incident on February 12, 1995, and required the same proof, namely that Webster violated the restraining order that Wife held against him. Because it appears from the record that both the contempt sanction and the invasion of privacy charge stem from the same act and require the same proof, the sole remaining controversy is whether the contempt sanction constitutes a jeopardy for the purposes of double jeopardy analysis.

■ The Contempt Court did not specify in its order whether Webster was in civil or criminal contempt. Civil contempt sanctions are coercive or remedial, while criminal contempt sanctions are punitive. *Pickett v. Pelican Service Associates*, 495 N.E.2d 245, 247 (Ind.Ct.App.1986), *reh'g denied*. This lack of a civil or criminal label is not problematic, however, in our determination of whether a jeopardy has occurred. *Bryant v. State*, 660 N.E.2d 290, 295 (Ind.1995), *cert. denied* —— U.S. ——, 117 S.Ct. 293, 136 L.Ed.2d 213 (1996). The test for determining whether a sanction, other than a criminal sentence, constitutes a jeopardy "is whether the civil sanction constitutes a 'punishment.'" *Id.* at 295–96. "When the sanction serves the goal of punishment rather than the remedial purposes of compensating the government for its loss, it is a 'punishment' and thus a 'jeopardy' within the Double Jeopardy Clause." *Id.* at 296; *United States v. Hal-*

---

2.  Because the transcript of the contempt hearing was not provided by either party in the record, we must rely on the two uncertified pages of transcript that Webster submitted with his Motion to Dismiss his charges. As the State notes, from these two pages it could be inferred that the violation of the restraining order was not the sole reason for the contempt finding. We need not address the other possible underlying reasons for the contempt sanction because we find other issues to be dispositive.

*per,* 490 U.S. 435, 109 S.Ct. 1892, 104 L.Ed.2d 487 (1989). For the contempt sanction to constitute the first jeopardy in our double jeopardy analysis, the sanction must be punitive, not remedial or coercive, in nature.[3]

Webster argues that because the Contempt Court sentenced him to a jail term, the contempt sanction was punitive, not remedial. The imposition of a jail term in a contempt proceeding does not automatically make it punitive, as imprisonment may be used to coerce compliance in civil contempt proceedings. *Duemling v. Fort Wayne Community Concerts, Inc.,* 243 Ind. 521, 188 N.E.2d 274, 276–77 (1963). "The object of a civil contempt is the enforcement or protection of the rights of the complainant, and only a coercive or remedial judgment may be entered. If the judgment seeks to coerce the defendant into doing an affirmative act by confinement in jail, it must provide that the imprisonment cease as soon as the act is done, so that it gives the defendant, 'the key of his prison in his own pocket.'" *State v. Gentry,* 229 Ind. 615, 100 N.E.2d 676, 678 (1951) (quoting *In re Nevitt,* 117 F. 448, 461 (8th Cir.1902)). The Contempt Court sentenced Webster to ninety days in jail, but stayed the sentence pending Webster's compliance with the terms of the restraining order and certain court imposed conditions. These conditions represented the "keys to the prison" that the court in *Gentry* stated was necessary for the imposition of a jail term in a civil contempt hearing. Thus, the Contempt Court's sentence was a civil contempt sanction and, therefore, not punitive in nature. *See Pickett v. Pelican Service Associates,* 495 N.E.2d 245 (Ind.Ct.App.1986), *reh'g denied* (civil contempt sanctions are coercive, while criminal contempt sanctions are punitive).

Webster was found in contempt for violating the restraining order granted Wife to protect her from harassment by Webster. "If the contempt consists of the refusal of a party to do something which he has been ordered to do for the benefit of the opposite party, the process is civil and he stands committed until he complies with the order. The order in such case is not punitive but *coercive.*" *Carey v. Carey,* 132 Ind.App. 30, 171 N.E.2d 487 (1961)(emphasis added). Like the contempt sanction in *Carey,* Webster's contempt sanction was not punitive but coercive. The contempt sanction was imposed and then stayed by the Contempt Court in an effort to coerce Webster into complying with the restraining order in the future. Had the Contempt Court sought to make its contempt finding punitive, it would have simply sentenced Webster to a jail term without the conditional stay. We therefore find that the contempt sanction was coercive or remedial, not punitive.[4]

A civil sanction is only a jeopardy for double jeopardy analysis when the sanction's goal is punishment. *Bryant,* 660 N.E.2d at 296. Following *Bryant,* the contempt sanction against Webster was not a jeopardy because, as discussed above, the purpose of the sanction was coercion, not punishment. We, therefore, hold that the subsequent invasion of privacy charge does not constitute double jeopardy. The Criminal Court was correct in denying Webster's motion to dismiss.

Affirmed.

HOFFMAN and DARDEN, JJ., concur.

---

3. The State argues that double jeopardy only applies to criminal prosecutions and, therefore, does not apply to Webster's contempt sanction. Because our supreme court has recently held that sanctions, other than criminal sentences, can be a jeopardy for double jeopardy purposes, we need not address the State's argument. *Bryant v. State,* 660 N.E.2d 290 (Ind.1995), *cert. denied* — U.S. —, 117 S.Ct. 293, 136 L.Ed.2d 213 (1996) (the Controlled Substance Excise Tax levied upon drug offenders before their criminal prosecution was a sanction constituting a jeopardy for double jeopardy purposes).

4. We limit our finding that the civil contempt sanction was not punitive to facts of this case and reemphasize that courts must look past the civil or criminal label to the purposes of the sanction when determining whether sanctions constitute a jeopardy in double jeopardy analysis. *Bryant v. State,* 660 N.E.2d 290 (Ind.1995), *cert. denied* — U.S. —, 117 S.Ct. 293, 136 L.Ed.2d 213 (1996).