**Ronald L. HUNTER, Appellant–Defendant,**

v.

**STATE of Indiana, Appellee–Plaintiff.**

No. 20A03–0303–CR–91.

Court of Appeals of Indiana.

Jan. 28, 2004.

Transfer Denied April 1, 2004.

Mark A. Kopinski, South Bend, IN, Attorney for Appellant.

Steve Carter, Attorney General of Indiana, Zachary J. Stock, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

## OPINION

FRIEDLANDER, Judge.

The State charged Ronald L. Hunter under three separate cause numbers (each involving a different child) with Nonsupport of a Dependent Child,[1] a class D felony. In cause number 20D06–0105–DF–522, Hunter was charged with nonsupport of his daughter B.R. (born December 3, 1989) on or between December 3, 1996 and July 1, 1998 and on or between December 1999 and February 2001. In cause number 20D06–0108–DF–748, Hunter was charged with nonsupport of his daughter A.H. (born April 7, 1987) on or between May 6, 1999 and April 17, 2001. Finally, in cause number 20D06–0108–DF–753, Hunter was charged with nonsupport of his daughter M.S. (born June 2, 1989) on or between June 8, 1996 and May 17, 1998. Hunter moved to dismiss the charges on double jeopardy grounds, arguing that contempt sanctions imposed in civil actions involving support of these children barred criminal prosecution for failure to provide support. Following a hearing, the trial court denied Hunter's motion to dismiss. Thereafter, the trial court certified the matter for interlocutory appeal, and we accepted jurisdiction pursuant to Appellate Rule 14(B). Hunter presents the following consolidated and restated issue for review: Do Hunter's prior contempt sanctions for failure to pay child support constitute a jeopardy for the purposes of double jeopardy analysis?

We affirm.

Hunter has fathered at least four children for whom support orders have been entered and considerable arrearages have accrued. On May 28, 1996, Elkhart Superior Court No. III (the Contempt Court) found Hunter in contempt for failing to pay court-ordered support for A.H., B.R.,

---

1. Ind.Code Ann. § 35–46–1–5 (West, PREM-ISE through 2003 1st Regular Sess.).

and another child (referred to as Y.) not involved in the instant criminal proceedings,[2] despite having the ability to pay the ordered support. Pursuant to this finding, the Contempt Court committed Hunter to the Elkhart County Jail with recommendation for work release. The court, however, withheld said commitment on the condition that Hunter make all current support payments.

On December 15, 2000, another contempt hearing was held regarding Hunter's continued failure to pay court-ordered support for A.H., B.R., and Y. At that time, the arrearages for A.H. and B.R. totaled over $18,000.00.[3] The Contempt Court offered to continue the hearing so that Hunter could obtain counsel to represent him in the matter. Hunter ultimately rejected this offer, admitting the arrearages and advising the court that he would rather go directly to work release. Therefore, the Contempt Court found Hunter in contempt for failing to pay support for A.H., B.R., and Y. The Contempt Court placed Hunter in work release until he purged himself of contempt.

Hunter began the Work Service Program on January 16, 2001. He was released from the program and returned to jail in early April, following two violations of the program's rules regarding alcohol use. The Work Release Violation Report filed with the Contempt Court noted that Hunter had been found "unsuitable to return to the Work Service Facility." *Appendix* at 209. On April 12, 2001, the Contempt Court held a hearing following Hunter's discharge from work release to determine appropriate placement for him until he purged himself of contempt.

Hunter's counsel suggested that rather than remain in jail, where he could not earn money to pay down the arrearages, Hunter should be placed on home detention. The court continued the matter to allow inquiry into alternative placement options.

By agreement of counsel on June 7, 2001, the Contempt Court ordered Hunter to be placed into the home detention program of the East Race Community Corrections Center (East Race). Hunter remained with East Race until April 2002 when he was terminated from the program for several violations, including tampering with his electronic monitoring equipment. Hunter was returned to jail on April 8, 2002 pending further hearing. Following an evidentiary hearing in July, the court found that Hunter violated the terms of his agreement with East Race and, thus, violated the terms of the court's order. Hunter was found in contempt for intentionally violating the order regarding East Race and sentenced to time served. The Contempt Court then ordered Hunter released from custody with respect to the civil case.

While the above contempt proceedings progressed, the State filed the three instant criminal charges in the Elkhart Superior Court VI (the Criminal Court) on May 22, August 17, and August 21, 2001. On September 4, 2002, Hunter filed a motion to dismiss on double jeopardy grounds, claiming that the contempt sanctions imposed on him from December 15, 2000 through July 18, 2002 were punitive, not remedial or coercive, in nature. The Criminal Court held a hearing on Hunter's motion on November 8, 2002. Thereafter,

---

2. No finding of contempt was ever made with regard to the civil case involving M.S. This cause was originally filed in 1991 in Elkhart Superior Court II and eventually transferred to Superior Court III in July 2001.

3. The arrearage for Y. was over $11,000.00.

on December 2, 2002, the trial court entered an order denying the motion to dismiss, relying on *Moore v. Ferguson,* 680 N.E.2d 862 (Ind.Ct.App.1997), *trans. denied.* The order provides in part:

> The records reviewed from Elkhart Superior Three reveal the sanctions were imposed by the court to coerce Ronald Hunter to pay child support. As *Moore* stated there are punitive aspects to any contempt sanctions. The continuing efforts of Elkhart Superior Court Three were to collect child support. In *Moore,* the Court, in fact, approved a nearly four and one half year contempt sentence in nine separate contempt findings. Elkhart Superior Court Three did give Ronald Hunter the "key" to his prison cell. It may not have been the "key" he wanted, but it was a "key." The programs the court utilized, Work Release and the East Race Home Detention Program, were attempts to coerce the collection of support. The fact that Ronald Hunter violated those programs and he spent time in the county jail were actions based on his behavior which extended the time he spent in jail. Although those programs charged for their services the purpose of his placement was the payment of child support.

*Appendix* at 186. Hunter appeals from this order.

[redacted] Hunter claims that the contempt sanctions, either in combination or individually, were punitive and not coercive. Because the sanctions were punitive, Hunter argues that jeopardy had been created in the Contempt Court and, therefore, principles of double jeopardy prohibit the Criminal Court from punishing him a second time for the same support arrearages.[4]

[redacted] We initially observe that Hunter was not found in contempt with regard to the civil case involving M.S. Rather, the contempt findings specifically related to his failure to pay court-ordered support for A.H., B.R., and another child not involved in the instant criminal proceedings. Because no finding of contempt was made in M.S.'s case, there is no merit to Hunter's double jeopardy claim with regard to the criminal charge of nonsupport of M.S., cause number 20D06–0108–DF–753. We now turn to the criminal charges regarding nonsupport of A.H. and B.R.

[redacted] The test for determining whether a sanction, other than a criminal sentence, constitutes a jeopardy is whether the civil sanction constitutes a punishment. *Webster v. State,* 673 N.E.2d 509 (Ind.Ct.App. 1996), *trans. denied.* We must look to the purposes of the sanction when determining whether it constitutes a jeopardy in double jeopardy analysis. *Id.* For a contempt sanction to constitute the first jeopardy in our double jeopardy analysis, the sanction must be punitive, not remedial or coercive, in nature. *Id.*

4. Hunter alternatively argues that collateral estoppel (or issue preclusion) should apply in this case. His argument in this regard reveals a fundamental misunderstanding of the doctrine of collateral estoppel. "Collateral estoppel operates to bar a subsequent relitigation of the same *fact or issue* where that *fact or issue* was necessarily adjudicated in a former suit and the same *fact or issue* is presented in the subsequent lawsuit." *Wilcox v. State,* 664 N.E.2d 379, 381 (Ind.Ct.App.1996) (emphases supplied) (father proved his inability to pay child support in the civil contempt proceedings and, in later criminal proceeding for nonsupport, (unsuccessfully) maintained that the first adjudication conclusively established an affirmative defense of inability to pay child support). We remind Hunter that the Contempt Court found him in contempt for failure to pay child support. Therefore, we are at a loss as to how he could defensively use any issue or fact determined in the former adjudication.

The primary objective of a civil contempt proceeding is not to punish, but rather to coerce action for the benefit of the aggrieved party. *Emery v. Sautter*, 788 N.E.2d 856 (Ind.Ct.App.2003), *trans. denied.* An order of imprisonment in a contempt proceeding, however, does not automatically render the sanction punitive, "as imprisonment may be used to coerce compliance in civil contempt proceedings." *Webster v. State*, 673 N.E.2d at 512. Even when an order of imprisonment appears to be punitive, the sanction must be viewed as remedial if the court conditions release upon the contemnor's compliance with the order. *Emery v. Sautter*, 788 N.E.2d 856. In other words, "[i]f the judgment seeks to coerce the defendant into doing an affirmative act by confinement in jail, it must provide that the imprisonment cease as soon as the act is done, so that it gives the defendant, the key of his prison in his own pocket." *Webster v. State*, 673 N.E.2d at 512 (internal quotations omitted).

Thus, the issue before us is whether the contempt sanctions were of a nature that could coerce Hunter into compliance with the support orders, or whether the sanctions were solely punitive measures for Hunter's failure to pay child support in the past. If the sanctions were punitive, then principles of double jeopardy would bar the instant criminal prosecutions for nonsupport of A.H. and B.R.[5] The crux of Hunter's argument is that he did not in reality hold the keys to his prison because the amount he had to pay in order to purge himself from contempt (*i.e.*, the full arrearage) was "inappropriate as well as virtually impossible." [6] *Appellant's Brief* at 11. Hunter also challenges the indefinite nature of his sentence for contempt.

Despite the incidental punitive aspects of Hunter's contempt sentence, we agree with the Criminal Court that the sentence was designed (and redesigned) by the Contempt Court to coerce Hunter into compliance with the child support orders. We first observe that the indefinite nature of Hunter's sentence did not transform it into a punitive sanction, as an indefinite sentence of imprisonment may be used to coerce compliance with a court order. *See Moore v. Ferguson*, 680 N.E.2d 862; *see also International Union, United Mine Workers of Am. v. Bagwell*, 512 U.S. 821, 114 S.Ct. 2552, 129 L.Ed.2d 642 (1994) ("[t]he paradigmatic coercive, civil contempt sanction ... involves confining a contemnor indefinitely until he complies with an affirmative command such as an order [to pay child support]"). "The only limit on the sentence is that it must give the contemnor an opportunity to purge himself from contempt". *Moore v. Ferguson*, 680 N.E.2d at 866 (upholding nine consecutive six-month sentences of imprisonment where contemnor had opportunity to purge himself from contempt by paying nearly $8000.00 in child support arrearages). Here, Hunter was given the opportunity to purge himself from contempt by complying with the court-ordered support payments and paying his arrearages. *See generally Mitchell v. Mitchell*, 785 N.E.2d 1194, 1199 (Ind.Ct.App.2003) ("one held in contempt for failing to pay support should be ordered to pay the total arrearage and given an opportunity to purge himself of contempt by paying the amount owed").

---

5. The State does not dispute the fact that the contempt sanctions and the criminal charges stem from the same period of nonsupport of A.H. and B.R. and, therefore, require the same proof.

6. Hunter claims that it would have taken between six and seven years to pay off the total arrearage through work release.

We are not persuaded by Hunter's argument that his sentence was punitive because he was required to pay an excessive amount to purge himself from the contempt. The large amount that Hunter was required to pay to purge himself from contempt was the result of his prolonged failure to comply with the support orders, despite his ability to pay the court-ordered support.[7] The Contempt Court utilized several alternatives to imprisonment in an attempt to obtain Hunter's compliance, while allowing him to work and earn money to be used toward the payment of support.

Initially, in 1996, the court withheld Hunter's imprisonment on the condition that Hunter make all current support payments. Hunter failed in this endeavor, falling significantly more in arrears, and came before the Contempt Court once again in 2000. At the hearing, Hunter admitted the arrearages and sought placement in work release. Accordingly, the Contempt Court placed Hunter in work release where he could earn money for the support payments. Hunter's later stint in jail was the result of his termination from work release for violating conditions of the program. Within a short time, however, Hunter was granted the privilege of home detention with East Race, pursuant to his request. This was another example of the Contempt Court accommodating Hunter in an effort to make repayment more realistic

than if he remained in jail. Despite this opportunity and after less than a year with East Race, Hunter's actions resulted in his termination from the program, and he was returned to jail. Approximately three months later, Hunter was released from jail following a hearing regarding his termination from East Race.

The coercive, rather than punitive, nature of the Contempt Court's handling of the matter is evident. Had the court simply intended to punish Hunter for his past failure to pay support for A.H. and B.R., it would have sentenced Hunter to jail without permitting alternatives to incarceration and without conditioning the sentence. Because the purpose of the Contempt Court's sanction was coercion, not punishment, the subsequent criminal charges regarding nonsupport of A.H. and B.R. do not constitute double jeopardy. *See Webster v. State,* 673 N.E.2d 509. The Criminal Court was correct in denying Hunter's motion to dismiss.[8]

Judgment affirmed.

RILEY, J., and SULLIVAN, J., concur.

---

7. At the May 28, 1996 contempt hearing, Hunter admitted that he had the ability to make the support payments as previously ordered in each case. Based upon this admission, the trial court found him in contempt for "non-compliance with the support orders when he could have complied, but elected not to do so." *Appendix* at 50. We further observe that in 2000 and 2001, Hunter affirmatively sought alternative placement in work release and with East Race, respectively, and did not raise an issue as to his ability to pay the arrearage until the last hearing before the

Contempt Court in July 2002. *See Wilcox v. State,* 664 N.E.2d 379 (parent who has failed to comply with a child support order has the burden of proving that the failure to comply was not willful or was otherwise excused due to financial inability to comply with the order).

8. We note that Hunter raises a somewhat incongruous issue as to whether, and to what extent, due process was required in the contempt proceedings. Hunter, however, did not appeal any aspect of the Contempt Court's rulings. Therefore, he may not now collater-

ally attack the validity of the contempt sanctions in this separate and distinct criminal action. *See Miller v. Lowrance,* 629 N.E.2d 846 (Ind.1994) (citing *State v. Dossett,* 174 Ind.App. 501, 368 N.E.2d 259 (1977)).