Ernest L. JONES, Appellant–
Defendant,

v.

STATE of Indiana, Appellee–Plaintiff.

No. 20A03–0312–CR–499.

Court of Appeals of Indiana.

July 27, 2004.

Nancy A. McCaslin, McCaslin & McCaslin, Elkhart, IN, Attorney for Appellant.

Steve Carter, Attorney General of Indiana, Joby Jerrells, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

## OPINION

BARNES, Judge.

### Case Summary

Ernest Jones appeals his conviction for nonsupport of a dependent child as a Class C felony and the sentence imposed thereon. We affirm but remand.

### Issues

Jones raises three issues, which we reorganize and restate as:

I.    whether his conviction violates his double jeopardy rights because he had already received civil contempt sanctions for failing to pay support;

II.    whether the calculation of his support arrearage improperly included amounts for the time period after support was abated; and

III.    whether the trial court relied upon an improper aggravating circumstance when it imposed the maximum sentence.

## Facts

The facts most favorable to the conviction follow. Jones fathered J.J. in March of 1983. Jones was a professional football player from 1988 through 1993. In 1989, the parties agreed that he would pay support of $430.00 per month beginning in March 1989.

In 1992, the parties modified their agreement to the extent that Jones agreed to pay $750.00 per month, retroactive to September 1, 1990. Jones failed to pay any support from January 8, 1997, through September 14, 2001. As of that date, Jones was $64,108.25 in arrears.

On November 9, 2001, the State charged Jones with nonsupport of a dependent child, a Class C felony. On May 5, 2003, the juvenile court abated support to March 14, 2001, held Jones in contempt, committed him to work release, and directed him to pay $100.00 per week toward the arrearage, which was $79,109.00 at that time. After a bench trial on May 5, 2003, the trial court found him guilty as charged and sentenced him to eight years in the work release unit of the Elkhart County Jail. He now appeals the conviction and sentence.

## Analysis

### I. Double Jeopardy

Jones challenges his conviction on the basis that it violates double jeopardy principles because of the prior contempt citation for violating a court order to pay support. His analysis includes challenges pursuant to both the federal and the state constitutional provisions. Because the analyses differ, we separately address each.

### A. United States Constitution

Jones first argues that his conviction violates federal double jeopardy tenants. The federal Double Jeopardy Clause provides that no person shall "be subject for the same offense to be twice put in jeopardy of life or limb." U.S. Const. amend. V. The purpose of the Double Jeopardy Clause is to protect citizens from: "(1) a second prosecution for the same offense after acquittal, (2) a second prosecution for the same offense after conviction and (3) multiple punishments for the same offense." *Bryant v. State*, 660 N.E.2d 290, 295 (Ind.1995), *cert. denied*, 519 U.S. 926, 117 S.Ct. 293, 136 L.Ed.2d 213 (1996).

We recently addressed the issue of federal double jeopardy principles in the context of a case where a defendant was charged with nonsupport of a dependent after having been held in contempt for failing to pay. In *Hunter v. State*, 802 N.E.2d 480 (Ind.Ct.App.2004), *trans. denied*, Hunter was charged with nonsupport of his children. He moved to dismiss the charges on double jeopardy grounds, arguing that contempt sanctions imposed in civil actions involving support of his children barred criminal prosecution for failure to provide support. The contempt sanctions included commitment to a work release program until the arrearage was satisfied. Following a hearing, the trial court denied the motion to dismiss. On interlocutory appeal, we held that no double jeopardy violation occurred with the filing of the criminal charges. *Id.* at 485.

In doing so, we noted that the test for determining whether a sanction, other than a criminal sentence, constitutes a jeopardy is whether the civil sanction constitutes a punishment. *Id.* at 483. We further noted that for a contempt sanction to constitute the first jeopardy in our double jeopardy analysis, the sanction must be punitive, not remedial or coercive, in nature. *Id.* We recognized that the primary objective of a civil contempt proceeding is not to punish, but rather to coerce action

for the benefit of the aggrieved party. *Id.* at 484.

We rejected Hunter's argument that the amount he had to pay in order to purge himself of the contempt was virtually impossible because it would have taken between six and seven years to pay off the total arrearage through work release and that the indefinite nature of the sentence for contempt rendered it punitive. *Id.* We found that despite the "incidental punitive aspects of Hunter's contempt sentence, we agree with the Criminal Court that the sentence was designed (and redesigned) by the Contempt Court to coerce Hunter into compliance with the child support orders." *Id.* We observed that the indefinite nature of Hunter's sentence did not transform it into a punitive sanction because an indefinite sentence of imprisonment may be used to coerce compliance with a court order. *Id.* We found that he was given the opportunity to purge himself from contempt by complying with the court-ordered support payments and paying his arrearages. *Id.*

We were unpersuaded by Hunter's argument that his sentence was punitive because he was required to pay an excessive amount to purge himself from the contempt. *Id.* We reasoned that the large amount that he was required to pay to purge himself from contempt was the result of his prolonged failure to comply with the support orders. *Id.* We concluded:

> The coercive, rather than punitive, nature of the Contempt Court's handling of the matter is evident. Had the court simply intended to punish Hunter for his past failure to pay support for [his children], it would have sentenced Hunter to jail without permitting alternatives to incarceration and without conditioning the sentence. Because the purpose of the Contempt Court's sanction was coercion, not punishment, the subsequent

criminal charges regarding nonsupport of [the children] do not constitute double jeopardy.

*Id.*

The facts before us today are strikingly similar to those in *Hunter.* Both men had received contempt sanctions for failing to pay support that amounted to an extended period of time in work release in order to satisfy the significant arrearages. Both men were charged with criminal nonsupport of dependents as well. The purpose of the contempt orders was to coerce the men into paying down the arrearages, at a minimum rate of $100 per week in Jones' case. There was no provision in the trial court's order committing Jones to work release for a specific period beyond that required for him to pay the arrearage. We see no basis for reaching a different conclusion here than we did in *Hunter.* There is no federal double jeopardy violation.

### B. Indiana Constitution

The Double Jeopardy Clause of the Indiana Constitution is to be interpreted separately from its federal counterpart. *Moore v. State,* 769 N.E.2d 1141, 1145 (Ind.Ct.App.2002). Article I, Section 14 of the Indiana Constitution provides that "[n]o person shall be put in jeopardy twice for the same offense." Our supreme court issued a watershed opinion in *Richardson v. State,* 717 N.E.2d 32, 43–44 (Ind.1999), clarifying the proper analysis for double jeopardy challenges under Section 14. The supreme court held that two or more offenses are the "same offense" in violation of Article I, Section 14, if, with respect to either the statutory elements of the challenged crimes or the actual evidence used to convict, the essential elements of one challenged offense also establish the essential elements of another challenged offense. Jones bases his state constitutional challenge on *Richardson,* arguing that

both the statutory elements and the essential elements parts of the analysis result in the conclusion that his conviction violated double jeopardy principles.

However, we must first consider the question of whether the *Richardson* analysis can be properly applied to a situation such as this where we are faced with the question of whether a civil contempt sanction and a criminal conviction arising from the same scenario violate double jeopardy principles. In *Richardson,* the defendant challenged his simultaneous robbery and battery convictions on double jeopardy grounds. Our supreme court examined the history of double jeopardy analysis with respect to how the term "same offense" has been interpreted over the years through various authority. The supreme court summarized early Indiana decisions by separating them into five categories— those following a conviction, a mistrial or the discharge of the jury or defendant, a successful appeal, an acquittal, and a civil action. *Id.*

The litany of cases the court examines in detail, however, all apply double jeopardy principles in the context of two or more criminal convictions. Indeed, the supreme court concludes:

> From our review of the constitutional text, the history and circumstances surrounding its adoption, and the earliest cases interpreting and applying the provision, we conclude that Indiana's Double Jeopardy Clause was intended to prevent the State from being able to proceed against a person twice for the same *criminal transgression.* While none of the early cases presented a comprehensive analysis, a generally articulated test, or a standard of review for double jeopardy claims, the holdings in these decisions do reflect a common theme. *A criminal transgression was a person's conduct that violated a statuto-*

*rily defined crime.* In seeking to determine whether two *criminal transgressions* were the same, this Court in its earliest decisions did not restrict its review only to a comparison of statutory elements of the *crime* or to an analysis of the language in the *charging instruments.* Rather, this Court also reviewed the actual evidence presented at trial when available.

> Synthesizing these considerations, we therefore conclude and hold that two or more offenses are the "same offense" in violation of Article I, Section 14 of the Indiana Constitution, if, with respect to *either* the *statutory elements* of the challenged *crimes or* the actual evidence used to *convict,* the essential elements of one challenged offense also establish the essential elements of another challenged offense. Both of these considerations, the statutory elements test and the actual evidence test, are components of the double jeopardy "same offense" analysis under the Indiana Constitution.

*Id.* at 49–50 (footnote omitted, italicized emphasis original, underlined emphasis supplied). With respect to the statutory elements test, the supreme court stated that the "objective of this test is to determine whether the essential elements of separate *statutory crimes charged* could be established hypothetically." *Id.* at 50 (emphasis supplied).

After carefully reviewing the language used by the supreme court in the *Richardson* opinion and considering its analysis, we conclude that it is not applicable to a fact pattern such as that with which we are faced today. Jones' double jeopardy challenge focuses on one criminal conviction and one civil contempt sanction, not on two statutorily defined crimes. Jones was held in contempt of court for failing to pay child support after having been ordered to do so; he was not convicted pursuant to a

statutorily defined crime. Indiana Code Section 31–14–12–3 provides, "If the court finds that a party is delinquent as a result of an intentional violation of an order for support, the court may find the party in contempt of court." This section merely grants authority to the trial court, in its discretion, to find a party in contempt of court for failing to pay child support. It does not create a "statutorily defined crime" as contemplated by the analysis set forth in *Richardson. Richardson,* 717 N.E.2d at 49.

Furthermore, we have repeatedly held that civil contempt proceedings are not criminal in nature. For example, we have stated:

> A civil contempt is a violation of a court order which results in a proceeding for the benefit of the aggrieved party. It is not an offense primarily against the dignity of the court, but rather is for the benefit of the party who had been injured or damaged by the failure of another to conform to a court order issued for the private benefit of the aggrieved party. Therefore, . . . the primary objective of a civil contempt proceeding is not to punish the defendant, but rather to coerce action for the benefit of the aggrieved party. Punishment in the form of imprisonment or a fine levied against the defendant, which goes to the State and not to the injured party, is characteristic of a criminal proceeding. In a civil contempt action the fine is to be paid to the aggrieved party, and imprisonment is for the purpose of coercing compliance with the order.

*Moore v. Ferguson,* 680 N.E.2d 862, 865 (Ind.Ct.App.1997) (quoting *Duemling v. Fort Wayne Community Concerts, Inc.,* 243 Ind. 521, 188 N.E.2d 274, 276 (1963) (citations omitted)), *trans. denied.* Thus, the purpose of *Richardson,* which is to provide a framework by which double jeopardy claims are analyzed to prevent defendants from being convicted of and/or punished for the same crime more than once in violation of the state Double Jeopardy Clause, is not thwarted by our conclusion. The Double Jeopardy Clause is not implicated here where we have but one conviction and one punishment. To the extent a civil sanction may be considered punitive in nature thus causing the defendant to be in jeopardy for purposes of a double jeopardy analysis, we have already determined that the sanction in this case does not fall within that category.

## II. Calculation of Arrearage

■ Jones challenges the trial court's calculation of the arrearage. He argues that it improperly included amounts accrued after the child support order had been abated. We agree.

On May 5, 2003, the juvenile court abated the support order to March 14, 2001, the child's eighteenth birthday. That court ordered counsel to recalculate the arrears so that it would not include amounts after that date. In October 2003, the trial court in this criminal case did not acknowledge the abatement during sentencing and calculated the amount of arrears without taking it into account. The failure to take the abatement into consideration for purposes of calculating the arrearage was erroneous. We remand for the trial court to recalculate the amount of arrears in light of the abatement date of March 14, 2001.

## III. Sentence

■ Jones challenges the eight-year sentence imposed by the trial court. Specifically, Jones argues that the aggravating factor cited by the trial court to enhance the sentence, namely the large arrearage, was an element of the offense and, there-

fore, was improper.[1] Sentencing decisions rest within the discretion of the trial court. *Smallwood v. State*, 773 N.E.2d 259, 263 (Ind.2002). Thus, we review such decisions only for an abuse of discretion. *Id.* An abuse of discretion occurs if the decision is clearly against the logic and effect of the facts and circumstances. *Newsome v. State*, 797 N.E.2d 293, 298 (Ind.Ct.App. 2003), *trans. denied.*

■■■ During the sentencing hearing, the trial court cited only the large amount of arrearage in support payments as an aggravating factor. The amount of arrearage is a proper aggravating circumstance and may be used to enhance Jones' sentence. Jones is correct when he notes that facts comprising a material element of a crime may not constitute an aggravating circumstance for sentencing purposes absent something specific about the way in which that element of the crime was committed. *See Smith v. State*, 655 N.E.2d 532, 541 (Ind.Ct.App.1995), *trans. denied.* However, that proposition of law does not in and of itself render the trial court's enhancement of Jones' sentence improper here. The length of time for nonpayment of child support and the amount of arrearage go to the severity of the crime and the proper length of the sentence. *Boss v. State*, 702 N.E.2d 782, 785 (Ind.Ct.App. 1998); *Gustman v. State*, 660 N.E.2d 353, 355 (Ind.Ct.App.1996), *trans. denied.* Therefore, the use of the amount of arrearage is not per se improper.

The trial court calculated Jones' arrearage to be $83,608.25. We have concluded that the trial court erroneously calculated the amount of arrearage and have remanded for a recalculation of the same. However, the amount of Jones' arrears is astounding even with the reduction and will

remain several times more than the statutory minimum of $10,000 (now $15,000) for the offense to be a Class C felony. It indicates a longstanding pattern of nonpayment and failure to accept responsibility for his child. Therefore, we cannot conclude that the trial abused its discretion in relying upon the amount of the arrearage to impose the maximum sentence on the conviction.

### Conclusion

Jones' conviction does not violate double jeopardy principles. We affirm Jones' conviction for nonpayment of child support but remand for the trial court to recalculate the amount of arrearage taking into account the order of abatement. We affirm the sentence because the amount of the arrearage is many times more than the statutory minimum even with the reduction due to the abatement. We affirm but remand for a recalculation.

Affirmed but remanded.

CRONE, J., and BAKER, J., concur.

---

**1.** We note that Jones does not argue that his sentence is inappropriate pursuant to Indiana Appellate Rule 7(B). Therefore, we will not address that question and will limit our analysis to the propriety of the trial court's consideration of this aggravating factor.