Billy Joe BRANUM, Appellant–
Respondent,

v.

STATE of Indiana, as Assignee of
the Support Rights Of Leisa K.
Sandlin, Appellee–Petitioner.

No. 40A01–0408–JV–371.

Court of Appeals of Indiana.

Feb. 28, 2005.

Thomas M. Frohman, Beth K. Silberstein, Indiana Legal Services, Bloomington, IN, Attorneys for Appellant.

Steve Carter, Attorney General of Indiana, Matthew D. Fisher, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

## OPINION

NAJAM, Judge.

### STATEMENT OF THE CASE

Billy Joe Branum appeals from the trial court's order finding him in contempt for failure to pay child support. He presents several issues on appeal, which we consolidate and restate as:

1. Whether the trial court erred when it did not advise him of his right to counsel at the contempt hearing.

2. Whether the State presented sufficient evidence to support the contempt finding.

3. Whether the trial court erred when it sentenced him.

We reverse and remand with instructions.[1]

---

1. We deny Branum's request for oral argument.

2. Branum contends that the trial court erred when it detained him for nine days following his arrest on the writ of body attachment without a hearing. But the evidence shows that Branum was also being detained during

## FACTS AND PROCEDURAL HISTORY

Branum and Leisa Sandlin are the parents of S.S., who was born out-of-wedlock in 1987. In 1989, the trial court entered an order establishing Branum's paternity of S.S. and directing Branum to pay $20 per week in child support to the Clerk of the Jennings Circuit Court. Several years later, in 1998, the trial court found that Branum was $2,692 in arrears and ordered him to pay $50 per week in child support and an additional $15 towards the arrearage.

Branum stopped making child support payments in April 2003, and he took a leave of absence from his job in July 2003. On October 15, 2003, the State, as assignee of Sandlin's support rights, filed a petition for contempt alleging that Branum was behind in his support payments in the amount of $6,517.32. The trial court ordered Branum to appear on January 28, 2004, and when he failed to appear, the trial court issued a writ of body attachment that same day. On July 6, 2004, Branum was arrested on the writ of attachment.

On July 15, 2004,[2] the trial court held a hearing on the State's contempt petition, and the court found Branum in contempt for failure to pay child support. The trial court did not advise Branum of his right to counsel, and Branum appeared at the hearing pro se. The court found his arrearage to be $8,517.32. The trial court sentenced Branum to 120 days. This appeal ensued.

---

that time on another matter in the Jennings Superior Court. As such, Branum cannot show that he was harmed by the trial court's actions, and there is no remedy available to him on appeal. Indeed, Branum does not request any relief.

## DISCUSSION AND DECISION

### Issue One: Right to Counsel

Branum first contends that the trial court erred when it did not advise him of his right to counsel at the contempt hearing. In particular, Branum asserts that because he faced possible incarceration upon a contempt finding, he was entitled to such an advisement. We must agree.

This court has observed that " '[i]t is crystal clear that a person may not be incarcerated by the state without first being advised of his constitutional right to counsel, and, if indigent, without having counsel appointed to represent him, whether the contempt proceedings are initiated by a private person or the state.' " *In re Marriage of Stariha*, 509 N.E.2d 1117, 1122 (Ind.Ct.App.1987) (quoting *Dube v. Lopes*, 40 Conn.Supp. 111, 481 A.2d 1293, 1294 (1984)). Here, the trial court did not advise Branum of his right to counsel at the contempt hearing. As such, we reverse the court's contempt finding and remand for a new hearing.

We note that if the trial court determines on remand that Branum is indigent, then he has the right to court-appointed counsel. *See id.* Indiana has long recognized a person's right to have counsel appointed under such circumstances. As Chief Justice Shepard has observed, "[m]ore than a century before *Gideon v. Wainwright* [372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963) ] was decided," in *Webb v. Baird*, 6 Ind. 13, 18, 1854 WL 3268 (1854), our supreme court recognized an indigent defendant's right to an attorney at public expense. *See* Randall T. Shepard, *Second Wind for the Indiana Bill of Rights*, 22 Ind. L.Rev. 575, 578 (1989). In *Webb*, the court stated:

> It is not to be thought of, in a civilized community, for a moment, that any citizen put in jeopardy of life or liberty, should be debarred of counsel because he was too poor to employ such aid. No Court could be respected, or respect itself, to sit and hear such a trial. The defence of the poor, in such cases, is a duty resting somewhere, which will be at once conceded as essential to the accused, to the Court, and to the public.

6 Ind. at 18. Here, however, we express no opinion whether Branum is eligible for court-appointed counsel. On remand, after the trial court has advised Branum of his right to counsel, the court must determine whether he is indigent.

### Issue Two: Sufficiency of the Evidence

Branum next contends that the State did not present sufficient evidence to support the contempt finding. While we disagree with that contention, we also note that a lack of sufficient evidence does not necessarily present a double jeopardy problem upon rehearing. The test for determining whether a sanction, other than a criminal sentence, constitutes a jeopardy is whether the civil sanction constitutes a punishment. *Hunter v. State*, 802 N.E.2d 480, 483 (Ind.Ct.App.2004). For a contempt sanction to constitute the first jeopardy in a double jeopardy analysis, the sanction must be punitive, not remedial or coercive, in nature. *Id.* As we discuss in Issue Three, *infra*, because the trial court's order is unclear regarding the nature of the sanction, there is no reason to bar the rehearing on double jeopardy grounds.

Regardless, there was sufficient evidence to support the contempt finding. Contempt is not appropriate unless the parent has the ability to pay the support due and his failure to do so was willful. *Pettit v. Pettit*, 626 N.E.2d 444, 448 (Ind. 1993). Here, Branum testified that he could go back to work for his old employer, but that he had chosen not to work for approximately one year prior to the hear-

ing. That evidence supports the trial court's contempt finding. Further, while Branum is correct that the State failed to present evidence regarding the amount of Branum's arrearage, he does not contend that that error bars rehearing in this matter.

### Issue Three: Sentence

Branum next contends that the trial court erred when it did not condition his release from jail on compliance with the child support order. The State maintains that the lack of such a provision is not grounds for reversal. Because we remand for a new hearing, we address this issue, as it is likely to recur.

 Our supreme court has held that: The primary objective of a civil contempt proceeding is not to punish the defendant, but rather to coerce action for the benefit of the aggrieved party. Punishment in the form of imprisonment or a fine levied against the defendant, which goes to the State and not to the injured party, is characteristic of a criminal proceeding. In a civil contempt action the fine is to be paid to the aggrieved party, and imprisonment is for the purpose of coercing compliance with the order.

*Duemling v. Fort Wayne Cmty. Concerts, Inc.*, 243 Ind. 521, 188 N.E.2d 274, 276 (1963). Even when an order of imprisonment appears to be punitive, it may still be lawful. *Emery v. Sautter*, 788 N.E.2d 856, 860 (Ind.Ct.App.2003). The sentence "must be viewed as remedial if the court conditions release upon the contemnor's willingness to [comply with the order]." *Moore v. Ferguson*, 680 N.E.2d 862, 865 (Ind.Ct.App.1997) (quoting *Shillitani v. United States*, 384 U.S. 364, 370, 86 S.Ct. 1531, 16 L.Ed.2d 622 (1966) (alteration in original)).

In *Emery*, upon finding the defendant in contempt for failure to pay child support, the trial court sentenced him to ninety days' incarceration. 788 N.E.2d at 860. In its sentencing statement, the trial court did not expressly condition the defendant's release upon his compliance with the order to pay child support. *Id.* On appeal, we stated that "[i]f Emery may not leave jail until the ninety-day sentence is served, then the court's actions may be viewed as purely punitive and, thus, unlawful." *Id.* And we observed that "if Emery may leave upon payment of support, the trial court's sentence is more appropriately deemed coercive and, thus, permitted." *Id.* at 860–61. Because it was unclear whether the sentence imposed was punitive or coercive in nature, we remanded the cause to the trial court "for further proceedings so that it [could] clarify whether the sentence was imposed for reasons other than mere punishment." *Id.* at 861.

 Here, as in *Emery*, it is unclear from the sentencing statement whether Branum's incarceration was intended to be punitive or coercive in nature. The trial court did not include an express provision whereby Branum's release was conditioned upon his compliance with the child support order. *See Hunter v. State*, 802 N.E.2d 480, 484 (Ind.Ct.App.2004). Because we are remanding for a new hearing, if the trial court should find Branum in contempt and impose a sentence, we instruct the court to specify that Branum can obtain his release from incarceration upon complying with the child support order. *See Emery*, 788 N.E.2d at 860–61 (holding only permissible sentence is coercive in nature).

Reversed and remanded with instructions.

KIRSCH, C.J., and VAIDIK, J., concur.