

FILED

Oct 17 2023, 8:48 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Kay A. Beehler
Terre Haute, Indiana

ATTORNEYS FOR APPELLEE

Theodore E. Rokita
Indiana Attorney General

Courtney Staton
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Russell G. Finnegan,

*Appellant-Defendant,*

v.

State of Indiana,

*Appellee-Plaintiff*

October 17, 2023

Court of Appeals Case No.
23A-MI-442

Appeal from the Pulaski Circuit
Court

The Honorable David Chidester,
Special Judge

Trial Court Cause No.
66C01-2110-MC-168

**Opinion by Judge Crone**
Judges Riley and Mathias concur.

**Crone, Judge.**

## Case Summary

[1] Russell G. Finnegan appeals the trial court's finding that he was in indirect
criminal contempt of court. He contends that the trial court abused its

discretion in failing to act on his notice of intent to file an insanity defense and appoint medical personnel to evaluate his mental health and testify at his criminal contempt hearing. We agree and therefore reverse and remand.

## Facts and Procedural History

[2] On June 17, 2021, Finnegan was charged with indirect criminal contempt of court under cause number 66C01-2106-MC-99 and ordered to show cause at a hearing as to why he should not be held in contempt. Special Judge John Potter was selected to preside over the hearing. Following a hearing, Judge Potter issued an order finding Finnegan in indirect criminal contempt. Thereafter, "the Court began to receive vulgar, misogynistic, inappropriate, and harassing correspondence" from Finnegan that was "in blatant disrespect of the Court's authority." Appellant's App. Vol. 2 at 12. On October 12, 2021, Judge Potter, sua sponte, initiated proceedings under cause number 66C01-2110-MC-168 and ordered Finnegan to show cause at a hearing as to why he should not again be held in indirect criminal contempt of court. Special Judge David Chidester was selected to preside over the hearing.

[3] During a hearing on January 3, 2023, Finnegan's counsel alerted the trial court that there is a "mental health issue with [Finnegan]" and that counsel was in the process of having mental health evaluations completed in an unrelated criminal case also pending in the Pulaski Circuit Court. Tr. Vol. 2 at 7.  On January 19, 2023, Finnegan filed a notice of intent to raise the defense of mental disease or defect and requested the trial court to appoint medical personnel to evaluate his mental health and testify at the contempt hearing. In

the notice, defense counsel again informed the trial court that evaluations were still pending in the unrelated criminal case. Counsel also filed a motion for continuance to allow for more time to obtain results. Judge Chidester never ruled on Finnegan's notice but denied the motion for continuance. Following the final contempt hearing held on January 27, 2023, Judge Chidester issued an order finding Finnegan in indirect criminal contempt pursuant to Indiana Code Section 34-47-3-1.[1] The trial court imposed a sanction of 170 days in the Department of Correction.[2] This appeal ensued.

## Discussion and Decision

[4] Finnegan challenges the trial court's finding that he was in indirect criminal contempt of court. As a general matter, our supreme court has explained,

> Contempt of court generally involves disobedience of a court or court order that undermines the court's authority, justice, and dignity. There are two kinds of contempt: direct contempt and indirect contempt. Indirect contempt, which is at issue in this case, involves those acts committed outside the presence of the

---

[1] That section provides:

A person who is guilty of any willful disobedience of any process, or any order lawfully issued:

    (1) by any court of record, or by the proper officer of the court;

    (2) under the authority of law, or the direction of the court; and

    (3) after the process or order has been served upon the person;

is guilty of an indirect contempt of the court that issued the process or order.

[2] A trial court "may impose a maximum sentence of six months 'for criminal contempt [ ] without guilt or innocence being determined by a jury.'" *Gerber v. State*, 167 N.E.3d 792, 799 (Ind. Ct. App. 2021) (quoting *Holly v. State*, 681 N.E.2d 1176, 1177 (Ind. Ct. App. 1997)), *trans. denied*.

court which nevertheless tend to interrupt, obstruct, embarrass or prevent the due administration of justice.

*Reynolds v. Reynolds*, 64 N.E.3d 829, 832 (Ind. 2016) (citations and quotation marks omitted). It is within the trial court's discretion to determine whether a party is in contempt, and we review the judgment under an abuse of discretion standard. *Id.* This Court will reverse a trial court's finding of contempt only if there is no evidence or inference therefrom to support the finding. *Id.*

[5] Finnegan raises two issues for our review, one of which we find dispositive. He asserts that the trial court abused its discretion in failing to appoint medical personnel to evaluate his mental health and testify at his criminal contempt hearing.[3] Specifically, he argues that a trial court "abuses its discretion when it improperly denies a defendant the evaluations contemplated by statute when a Notice of Mental Disease or Defect has been filed." Appellant's Br. at 16. We agree.

[6] Indiana Code Section 35-36-2-2 provides:

---

[3] Finnegan also asserts that the trial court's application of Indiana Code Section 34-47-3-1 infringed upon his constitutional right to free expression pursuant to Article 1, Section 9 of the Indiana Constitution. While we need not address this issue because we reverse the court's contempt finding on other grounds, we note that Finnegan waived this claim because he did not raise this issue below and raises it for the first time on appeal. It is well established that arguments raised for the first time on appeal, even ones based upon constitutional claims, are waived. *State v. Allen*, 187 N.E.3d 221, 228 (Ind. Ct. App. 2022), *trans. denied*; *see Ellis v. State*, 194 N.E.3d 1205, 1217 (Ind. Ct. App. 2022) (failure to invoke Article 1, Section 9 of Indiana Constitution in argument before trial court resulted in waiver on appeal), *trans. denied*.

(a) At the trial of a criminal case in which the defendant intends to interpose the defense of insanity, evidence may be introduced to prove the defendant's sanity or insanity at the time at which the defendant is alleged to have committed the offense charged in the indictment or information.

(b) When notice of an insanity defense is filed in a case in which the defendant is not charged with a homicide offense under IC 35-42-1, the court shall appoint two (2) or three (3) competent disinterested:

(1) psychiatrists;

(2) psychologists endorsed by the state psychology board as health service providers in psychology; or

(3) physicians;

who have expertise in determining insanity. At least one (1) of the individuals appointed under this subsection must be a psychiatrist or psychologist. The individuals appointed under this subsection shall examine the defendant and testify at the trial. This testimony shall follow the presentation of the evidence for the prosecution and for the defense, including the testimony of any mental health experts employed by the state or by the defense.

[7]     Here, well before the final criminal contempt hearing, Finnegan's counsel alerted the trial court that there is a "mental health issue with [Finnegan]" and that he was in the process of having mental health evaluations completed in an unrelated criminal case also pending in the Pulaski Circuit Court. Tr. Vol. 2 at 7. In response, Judge Chidester remarked that he personally did not believe that

Finnegan was mentally ill based upon prior observations of and interactions with him. At the conclusion of the hearing, the court scheduled the final criminal contempt hearing for January 27, 2023. On January 19, 2023, Finnegan's counsel filed a notice of his intent to raise the defense of mental disease or defect along with a request for the appointment of medical personnel to examine Finnegan pursuant to Indiana Code Section 35-36-2-2. Defense counsel informed the court that one of the evaluations had been completed in the unrelated criminal matter and that the other evaluation was still pending. The trial court never ruled on Finnegan's notice or request, and the criminal contempt hearing proceeded on January 27, 2023, after which Finnegan was found in contempt and sentenced to just under six months of jail time.

[8] The State's sole response to the trial court's "fail[ure] to act upon Finnegan's request to assert an insanity defense" is its claim that Finnegan was simply "not entitled" to file that notice and obtain the statutory mental health evaluations because a contempt proceeding is not a "trial of a criminal case" as contemplated by Indiana Code Section 35-36-2-2. Appellee's Br. at 17-18. The State likens contempt proceedings to "other civil matters[,]" *see id.*, and directs us to case law in which Indiana courts have recognized the general proposition that contempt is a "*sui generis* proceeding neither civil nor criminal in nature, although both of those labels are used to describe certain categories of

contempt." *Buford v. State*, 139 N.E.3d 1074, 1079 (Ind. Ct. App. 2019) (quoting *State v. Heltzel*, 552 N.E.2d 31, 33 (Ind. 1990)).[4]

[9]     It is well established that contempt proceedings are categorized as either civil or criminal, according to the nature and purpose of the sanction imposed. *Gerber v. State*, 167 N.E.3d 792, 798 (Ind. Ct. App. 2021), *trans. denied*.

> A civil contempt is a violation of a court order resulting in a proceeding for the benefit of the aggrieved party. As such, any type of penalty in a civil contempt proceeding must be coercive or remedial in nature. By contrast, a criminal contempt is an act directed against the dignity and authority of the court that obstructs the administration of justice and tends to bring the court into disrepute. Accordingly, a criminal contempt sanction is punitive in nature because its purpose is to vindicate the authority of the court, and it benefits the State rather than the aggrieved party.

---

[4] In likening contempt proceedings to "other civil matters," the State relies on *Patterson v. State*, 659 N.E.2d 220, 223 (Ind. Ct. App. 1995), in which this Court rejected the defendant's argument that, during probation revocation proceedings, the trial court abused its discretion in not appointing two or three psychiatrists or psychologists to examine him and testify pursuant to Indiana Code Section 35-36-2-2. Specifically, we concluded that the insanity defense statute was inapplicable to probation revocation proceedings, stating that the statute "concerns a 'criminal case'" while "[a] revocation proceeding is in the nature of a civil case." *Id.* However, we based our decision in part on prior holdings that a probation revocation hearing was not a criminal proceeding for purposes of double jeopardy. *Id.* (citing *Ashba v. State*, 570 N.E.2d 937 (Ind. Ct. App. 1991), *aff'd*, 580 N.E.2d 244 (Ind. 1991), *cert. denied* (1992). Unlike a probation revocation, however, our courts have repeatedly recognized that criminal contempt proceedings and the punitive sanctions imposed implicate double jeopardy. *See Buford,* 139 N.E.3d at 1080 (vacating criminal contempt finding: "[h]aving found that the contempt sanction was punitive and thus that the sanction of ninety days in the Marion County jail constituted a punishment, we find that the State's filing [of a count for invasion of privacy] on the same day as the contempt hearing … constitutes double jeopardy concerns."); *see also Hunter v. State*, 802 N.E.2d 480, 483 (Ind. Ct. App. 2004) (noting test for determining whether a sanction, other than a criminal sentence, constitutes jeopardy is whether the sanction constitutes a punishment), *trans. denied*. We are not persuaded by the State's attempt to equate criminal contempt proceedings with probation revocation proceedings.

*Id.* (citation omitted).

Indeed, this Court has recognized that "[o]ne who is subject to criminal contempt is afforded many of the same constitutional safeguards that a defendant in a criminal trial enjoys because of the penalties that may be imposed." *Wine v. State*, 147 N.E.3d 409, 415-16 (Ind. Ct. App. 2020), *trans. denied*. "Criminally contemptuous conduct may violate other provisions of the criminal law; but even when this is not the case *convictions for criminal contempt are indistinguishable from ordinary criminal convictions, for their impact on the individual defendant is the same*." *Id*. at 416 (emphasis in *Wine*) (quoting *Bloom v. Illinois*, 391 U.S. 194, 201 (1968)). That is to say, "the role of criminal contempt and that of many ordinary criminal laws seem identical—protection of the institutions of our government and enforcement of their mandates." *Id*. (quoting *Bloom*, 391 U.S. at 201). Simply put, criminal contempt is "a crime in every fundamental respect" as it "is a violation of the law, a public wrong which is punishable by fine or imprisonment or both." *Id*. (quoting *Bloom*, 391 U.S. at 201).

We conclude that a criminal contempt proceeding is a "trial of a criminal case" as contemplated by Indiana Code Section 35-36-2-2.[5] Accordingly, defendants

---

[5] We acknowledge that a criminal contempt is not categorized as a felony or a misdemeanor as those terms are used in the prior subsection, Indiana Code Section 35-36-2-1, regarding the time for filing a notice of intent to interpose an insanity defense. *See Holly*, 681 N.E.2d at 1177 (noting that a criminal contempt is categorized as a "petty" contempt or a "serious criminal contempt" based upon the penalty actually imposed). This does not change our opinion that a criminal contempt proceeding is a "criminal case" in which a notice of insanity defense may be filed.

like Finnegan, who are held to answer for criminal contempt and face the same array of punishments as do other criminal defendants, are entitled to the same statutory protections afforded other criminal defendants, including the right to file a notice of insanity defense and obtain the appointment of appropriate experts to testify at the contempt proceedings. Therefore, the trial court here abused its discretion in failing to act upon Finnegan's notice and thereby denying him the mental health evaluations required by Indiana Code Section 35-36-2-2.

[12] We reject the State's alternative assertion that, even assuming that Finnegan was improperly denied the required mental health evaluations, any such error was harmless. "An error is harmless when it results in no prejudice to the 'substantial rights' of a party." *Durden v. State*, 99 N.E.3d 645, 652 (Ind. 2018) (citation omitted). A criminal defendant who raises an insanity defense bears the burden of proving by a preponderance of the evidence that he suffers from a "mental disease or defect" that rendered him "unable to appreciate the wrongfulness of the conduct at the time of the offense." Ind. Code § 35-41-3-6(a). Our supreme court has recognized that defendants generally rely on expert testimony to meet this evidentiary burden because "[o]pinion testimony from psychiatrists, psychologists, and other mental-health experts is central to a determination of insanity." *Barcroft v. State*, 111 N.E.3d 997, 1003 (Ind. 2018). "Unlike lay witnesses, who can merely describe symptoms they believe might be relevant to the defendant's mental state, mental-health experts can identify the elusive and often deceptive symptoms of insanity and tell the [factfinder]

why their observations are relevant." *Id*. (citation omitted). "In short, their goal is to assist factfinders, 'who generally have no training in psychiatric matters, to make a sensible and educated determination about the mental condition of the defendant at the time of the offense.'" *Id.* (citation omitted).

[13] The State suggests that Judge Chidester did not need assistance from experts because he was essentially able to and did determine, based upon his prior observations and familiarity with Finnegan, that Finnegan did not suffer from a mental disease or defect that rendered him incapable of appreciating the wrongfulness of his conduct. However, we emphasize that criminal contempt is a specific intent offense, as it requires that the defendant's conduct be "willful." Ind. Code § 34-47-3-1. Accordingly, the only relevant mental condition is Finnegan's condition at the time of this offense.

[14] We recognize that "even when experts are unanimous in their opinion, the factfinder may discredit their testimony—or disregard it altogether—and rely instead on other probative evidence[,]" such as lay testimony or demeanor evidence, "from which to infer the defendant's sanity." *Barcroft*, 111 N.E.3d at 1003 (citing *Galloway v. State*, 938 N.E.2d 699, 710 (Ind. 2010)). Be that as it may, Finnegan should have had the opportunity to obtain and offer the requested expert evaluations, and it would have then been the trial court's prerogative to disregard that testimony if it was unpersuasive or inconsistent with other probative evidence. Under the circumstances presented, we simply cannot say with confidence that the absence of expert opinion testimony had no bearing on the outcome of this case. *See Durden*, 99 N.E.3d at 652 (noting basic

premise of harmless error analysis that criminal conviction may stand when error had no bearing on outcome of case). Therefore, we reverse the trial court's finding of indirect criminal contempt and remand for further proceedings consistent with this opinion.

Reversed and remanded.

Riley, J., and Mathias, J., concur.